PEOPLE v MOORE

Docket No. 122832. Submitted January 14, 1991, at Detroit. Decided April 1, 1991, at 9:55 A.M.

Timothy Moore was convicted by a jury in the Detroit Recorder's Court, Michael J. Talbot, J., of second-degree murder and possession of a firearm during the commission of a felony. The Court of Appeals affirmed in an unpublished per curiam opinion, and the Supreme Court affirmed the convictions but remanded the case to the trial court for resentencing, finding that the sentence of one hundred to two hundred years in prison for the murder conviction to be served consecutively to a two-year sentence for the felony-firearm conviction, was invalid because it exceeded the defendant's life expectancy and that he did not have a reasonable expectation of serving the minimum term and becoming eligible for parole. 432 Mich 311 (1989). On remand, the trial court sentenced the defendant to fifty to one hundred years in prison for the murder conviction and to a consecutive two-year term for the felony-firearm conviction. The defendant appealed.

The Court of Appeals *held:*

The defendant will be eighty-four years of age at the time of the expiration of his minimum sentence, an age to which he reasonably can be expected to live. Therefore, the sentence does not violate the life-expectancy rule announced in *Moore,* 432 Mich 311, 329 (1989).

Affirmed.

MURPHY, P.J., dissenting, stated that the case should be remanded for resentencing under the principle of proportionality announced in *People v Milbourn,* 435 Mich 630 (1990).

SENTENCES — INDETERMINATE SENTENCES — MINIMUM TERMS.

A sentence imposed for a term of years must be an indeterminate sentence less than life that is reasonably possible for a defendant to serve; it is reasonably possible that a thirty-four-year-

REFERENCES

Am Jur 2d, Criminal Law § 542.

See the Index to Annotations under Indeterminate Sentence; Sentence and Punishment.

old defendant who is sentenced to fifty to one hundred years' imprisonment will serve the minimum term.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training and Appeals, and *Joseph A. Puleo,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Fred E. Bell*), for the defendant on appeal.

Before: MURPHY, P.J., and SULLIVAN and SAWYER, JJ.

SAWYER, J. Defendant was convicted, following a jury trial, of murder in the second degree, MCL 750.317; MSA 28.549, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was originally sentenced to serve a term of one hundred to two hundred years in prison for the murder conviction and to a consecutive two-year sentence for the felony-firearm conviction. On appeal, this Court affirmed. *People v Moore,* unpublished opinion per curiam of the Court of Appeals, decided February 19, 1987 (Docket No. 89319).

However, the Michigan Supreme Court determined that defendant's sentence was invalid because it exceeded his life expectancy and he did not have a reasonable expectation of serving his minimum term and becoming eligible for parole. *People v Moore,* 432 Mich 311, 329; 439 NW2d 684 (1989). On remand, the trial court reimposed the mandatory two-year sentence for the felony-firearm conviction and cut defendant's sentence for the murder conviction in half, sentencing defen-

dant to a term of fifty to one hundred years.
Defendant appeals again and we affirm.

The facts giving rise to defendant's conviction
were fully set out in Justice Boyle's dissent in
*Moore, supra* at 332-334:

> At the trial it was established that the victim
> was at her home with her fiance on February 25,
> 1985. The victim's fiance testified that at approxi-
> mately five o'clock a car pulled up in the driveway
> and that he recognized the person getting out of
> the car as the defendant. While the defendant's
> sister remained in the car, the defendant came to
> the porch, knocked on the door, and called out the
> victim's name. The defendant asked to speak to
> the victim, saying that he wanted some pictures
> and albums that belonged to him and stated that,
> "I got my sister with me. I'm not going to do
> anything." At that point the victim opened the
> door.

> The defendant asked the victim to step out on
> the front porch where she informed him she would
> pack up the albums immediately and went back
> into the house. The defendant then returned to the
> car, and his sister got out of the car and they both
> came into the house.

> When the defendant and his sister entered the
> home, they remained in the living room, and when
> the victim came into the room, the defendant
> indicated he wished to speak to her in the back.
> The victim's fiance testified that he said no and
> that the defendant opened up the briefcase and
> produced a gun and stated, "Oh yes. I'm going to
> talk to her." The defendant then jumped off the
> couch and grabbed the victim's hand and pulled
> her into the bedroom.

> Both the defendant's sister and the victim's
> fiance testified that they heard the victim plead,
> "Please don't kill me." The defendant fired two
> shots and the victim screamed, "Somebody help
> me."

> Medical documentation revealed that the defen-

dant stabbed the victim seven times, either with a
knife or a screwdriver. The evidence technician
assigned to the homicide case testified that it
appeared the struggle originated in the bedroom,
then went through the hallway into the living
room area, finally ending in the kitchen. The
living room walls, which were eleven feet apart
had blood smears and droplets on both sides of the
walls, as did the entrance to the bedroom, the
bedroom itself, and the hallways.

After a three-day trial the jury found the defen-
dant guilty of second-degree murder and felony-
firearm. On October 31, 1985, the day of sentenc-
ing, the trial judge reviewed the evidence pre-
sented at trial and the information contained in
the presentence report. According to the report,
the defendant had intended to carry out this plan
over a period of time. The defendant had threat-
ened the victim a number of times, and she had
tried changing her address on two occasions.

The thirty-four-year-old defendant had a juve-
nile history that began at age fifteen, three prior
felony convictions, and one misdemeanor convic-
tion. The presentence report revealed the circum-
stance of defendant's prior armed robbery convic-
tion which involved forcible entry into an apart-
ment and a robbery and rape of one of its occu-
pants.

The judge noted:

"We know from the evidence and the testimony
that at some given point the deceased must have
been physically in a position where she was cower-
ing down. At least the shot that was fired, was
fired in the direction that it traveled in a down-
ward fashion, grazing the scalp, I believe, and the
hand, and then entering into the dresser drawer.
We know that by the trail of blood from that
bedroom throughout and into the kitchen that she
was fleeing or trying to escape from Mr. Moore.
And we know that Mr. Moore did in fact mutilate
the deceased by stabbing her some seven times.

"I don't know what any appellate court would
need by way of recitation other than what I just

stated, but a heinous crime of this nature deserves a substantial sentence in order to deter others and as straight out punishment in the hope that Mr. Moore will not be in a position to be in society to do it again in this life. Because the appellate courts of our state have said that in point of fact a life sentence for this sort of crime allows him to be reviewed in ten years, I intend to utilize numbers with the belief that the law requires that the numbers be served before you become eligible for review."

On appeal, defendant challenges his new sentence as again being violative of the life-expectancy rule announced in *Moore.* Before determining whether the sentence does, in fact, violate the *Moore* doctrine, we should note that defendant, whose brief was filed before the Supreme Court decision in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), does not argue that his sentence should shock our conscience, nor has defendant filed a supplemental brief in light of *Milbourn* to argue that the sentence violates the rule of proportionality announced in *Milbourn.* Defendant's failure to raise such an argument is certainly understandable inasmuch as the Supreme Court in its opinion specifically found that the prior sentence imposed, one hundred to two hundred years, did not shock its conscience, nor was the effective length of the sentence, life imprisonment, an abuse of discretion. *Moore, supra* at 325. In any event, the only question to be answered is whether the trial court on resentencing fashioned a sentence which defendant can reasonably be expected to serve and, therefore, complies with the *Moore* doctrine.

Defendant was thirty-four years of age at the time he committed the instant offense and at the time of his original sentencing. *Id.* at 328. Moreover, the trial court noted that defendant would

have to serve approximately 40.7 years before becoming eligible for parole, a figure with which defendant does not disagree.[1] Defendant first urges us to hold that his instant sentence violates the *Moore* doctrine because he will be 134 years old before the expiration of his sentence.[2] This Court, in *People v Rushlow*, 179 Mich App 172; 445 NW2d 222 (1989), specifically rejected the proposition that a maximum sentence must be within the defendant's life expectancy under the *Moore* rule. See also *People v Clemons*, 184 Mich App 726; 459 NW2d 40 (1990); *People v Piper*, 181 Mich App 583; 450 NW2d 72 (1989). Furthermore, our research failed to reveal any published opinion of this Court which has clearly held that a maximum sentence must come within the defendant's life expectancy.

[1] We should note at this point that some of the figures used by us in this opinion differ slightly from figures used by defendant in his brief. This discrepancy can be explained on the basis of two errors made by defendant in calculating a number of dates or ages. First, in at least some places, defendant calculates his age at a future event, such as his age at his earliest possible parole date, on the basis of his age at the time of resentencing rather than his age at the time of his initial incarceration. Since defendant received credit for time served since his initial incarceration, that is the appropriate date to use to calculate things such as earliest parole date, expiration of minimum sentence, and maximum release date, rather than the date of resentencing. Thus, all of our calculations are based upon defendant's beginning to serve his sentence at the age of thirty-four, not thirty-eight as defendant uses in at least some portions of his brief. Second, defendant calculates his dates on the basis of consideration of the mandatorily consecutive two-year sentence for the felony-firearm conviction. Defendant ignores the fact that the Supreme Court, in *People v Harden*, 434 Mich 196, 202-203; 454 NW2d 371 (1990), held that each sentence is to be reviewed in light of *Moore* without regard to whether the sentence is consecutive or concurrent and specifically used the *Moore* case as an illustration, noting that if the trial judge in the case at bar chose to impose a term of years on resentencing, it was to be to a term less than life, not to a term less than life minus two years. *Harden, supra* at 203. Thus, defendant inappropriately adds in his consecutive two-year sentence for the felony-firearm conviction. We note that the Supreme Court decision in *Harden* was decided before the filing of defendant's brief in the case at bar.

[2] Actually, defendant contends he would be 137 years old. See n 1.

Defendant also argues that his sentence is violative of *Moore* even if we look at the minimum sentence imposed. We disagree. Without considering disciplinary credits, defendant will be eighty-four years of age at the time of the expiration of his minimum sentence. No published decision of this Court has to date rejected a sentence for which the defendant would be eighty-four years of age at the expiration of the minimum term. Indeed, the "lowest"[3] sentence which this Court has rejected in a published opinion was in *People v Mayfield,* 182 Mich App 282; 451 NW2d 583 (1990), where the Court rejected a sentence of fifty to eighty years imposed upon a thirty-nine-year-old defendant. On the other hand, the "longest"[4] explicitly approved by this Court was in *Rushlow, supra,* where this Court approved a sentence where the defendant would be eighty-seven years of age before becoming eligible for parole. We conclude that defendant can be reasonably expected to live to the age of eighty-four and, therefore, the minimum sentence does not violate the *Moore* doctrine.

Defendant also complains of the fact that the trial court took into account disciplinary credits in determining the minimum sentence which may be imposed in accordance with the *Moore* ruling. A conflict exists in this Court regarding whether disciplinary credits may be taken into account. We concluded that they could be in *Rushlow, supra;* see also *Clemons, supra.* However, this Court rejected consideration of disciplinary credits in *Mayfield, supra.* In light of our determination that defendant's sentence is valid without consideration of disciplinary credits, we need not resolve this

---

[3] I.e., the minimum term plus the age at the time of sentencing.

[4] Again, the minimum sentence plus the age at sentencing.

conflict at this time and decline to address the issue.

Affirmed.

SULLIVAN, J., concurred.

MURPHY, P.J. *(dissenting).* Defendant's sentence exceeded the sentencing guidelines. Under the newly announced "principle of proportionality," our Supreme Court has instructed us that departures from the guidelines, while permissible, are suspect and are subject to careful scrutiny on appeal. *People v Milbourn,* 435 Mich 630, 659-660; 461 NW2d 1 (1990). In fact, *Milbourn* tells us that even where some departure from the guideline range is appropriate, the extent of the departure may be violative of the principle of proportionality. *Id.,* 660.

Defendant clearly raised and preserved the issue of sentence length in this appeal, which was pending when *Milbourn* was decided. Therefore, *Milbourn* applies to this appeal. *Id.,* 669-670. The trial judge, in exercising his sentencing discretion in this case, did not have the benefit of the new standards announced in *Milbourn,* and, accordingly, I would remand this matter to the trial court for resentencing within the dictates of the *Milbourn* opinion.