PEOPLE v WEAVER (AFTER REMAND)

Docket No. 124373. Submitted July 9, 1991, at Detroit. Decided
    December 16, 1991, at 9:25 A.M.

    Paul Weaver was convicted by a jury in the Recorder's Court for
    the City of Detroit, Michael J. Talbot, J., of two counts of first-
    degree criminal sexual conduct, one count of armed robbery,
    and one count of assault with intent to murder and was
    sentenced to 50 to 100 years' imprisonment for each of the CSC
    convictions, 20 to 40 years' imprisonment for the armed rob-
    bery conviction, and 100 to 200 years' imprisonment for the
    conviction of assault with intent to murder. He appealed, and
    the Court of Appeals, GRIBBS, P.J., and MURPHY and NEFF, JJ.,
    affirmed in an unpublished opinion per curiam, but remanded
    for resentencing consistent with the rule announced in *People
    v Moore,* 432 Mich 311 (1989), requiring that a sentence im-
    posed for a term of years must be an indeterminate sentence
    less than life that is reasonably possible for the defendant to
    serve, with regard to the assault conviction. (Docket No.
    110729). On remand, the defendant was resentenced to 75 to
    150 years' imprisonment for the assault conviction. The defen-
    dant appealed, alleging violation of the rule announced in
    *Moore.*

    After remand, the Court of Appeals *held:*

    The trial court properly resentenced the thirty-year-old de-
    fendant, who will be in his early nineties when first eligible for
    parole, to a sentence that he can reasonably be expected to
    serve. *Moore* requires only that it be reasonably possible for the
    defendant to serve the minimum sentence. The trial court also
    properly considered regular disciplinary credits in sentencing
    the defendant.

    Affirmed.

    HOOD, J., dissenting in part, stated that the defendant did not
    receive a sentence he can reasonably be expected to serve.

REFERENCES

Am Jur 2d, Criminal Law §§ 535, 542, 606.
See the Index to Annotations under Good Behavior; Indeterminate
    Sentence.

1. Sentences — Indeterminate Sentences — Minimum Terms.
    The rule that a sentence imposed for a term of years must be an
    indeterminate sentence less than life that is reasonably possi-
    ble for a defendant to serve applies only to a minimum sen-
    tence.

2. Sentences — Indeterminate Sentences — Regular Disciplinary
    Credits.
    The effect of regular disciplinary credits may be considered by a
    court in fashioning an appropriate indeterminate sentence.

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, *John D. O'Hair,* Prose-
cuting Attorney, *Timothy A. Baughman,* Chief of
Research, Training, and Appeals, and *Robert A.
Radnick,* Assistant Prosecuting Attorney, for the
people.

*Paul M. Stoychoff,* for the defendant on appeal.

AFTER REMAND

Before: Weaver, P.J., and Hood and Gribbs, JJ.

Weaver, P.J. This is defendant's second appeal
as of right in this case. In a prior unpublished
opinion per curiam, decided August 24, 1989, this
Court related the factual circumstances, which we
quote:

> In this case, defendant kicked in the complain-
> ant's apartment door. Defendant raped and sodom-
> ized the complainant at knifepoint and then de-
> manded money. When the complainant emptied
> her piggy bank, defendant took the money and
> said it was not enough. He tied the complainant
> with a telephone cord, punched her in the stom-
> ach, tried to smother her with a pillow and choked
> her. In her struggle, the complainant managed to
> free one of her arms and she scratched defendant's
> face. Defendant then stabbed her repeatedly in the
> chest and stomach. Defendant dragged the com-

plainant to the bathroom, pushed her into the bathtub and began cutting and stabbing her neck and head. He hit her over the head with a cast iron skillet with such force that the skillet broke. When defendant left the room, the complainant crawled upstairs to a neighbor and knocked on their door until they opened it.

Defendant was convicted by a jury of two counts of first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2), one count of armed robbery, MCL 750.529; MSA 28.797, and one count of assault with intent to murder, MCL 750.83; MSA 28.278. He was sentenced to 50 to 100 years' imprisonment for each of the csc convictions, 20 to 40 years' imprisonment for the armed robbery conviction, and 100 to 200 years' imprisonment for the conviction of assault with intent to murder. He appealed as of right, and the Court of Appeals, GRIBBS, P.J., and MURPHY and NEFF, JJ., affirmed in an unpublished opinion per curiam but remanded for resentencing consistent with the Supreme Court's ruling in *People v Moore,* 432 Mich 311; 439 NW2d 684 (1989), with regard to the sentence for the conviction of assault with intent to murder. (Docket No. 110729). On remand, defendant was resentenced to 75 to 150 years' imprisonment, with credit for 692 days served, for his conviction of assault with intent to commit murder. In the current appeal, defendant claims that his new sentence for the assault conviction violates the statutory rule announced in *Moore, supra,* hereafter *Moore I.*

Before determining whether the sentence does in fact violate *Moore I,* we note that defendant has not raised any challenge to the trial court's exercise of discretion. The only question to be answered is whether the trial court on resentencing fashioned a sentence that defendant can reason-

ably be expected to serve and, therefore, that comports with statutory requirements as interpreted in *Moore I.* Compare *People v Moore,* 188 Mich App 244, 248; 469 NW2d 34 (1991), hereafter *Moore II.*

We reject defendant's assertion that *Moore I* requires that both the minimum and maximum sentence be reasonably possible for a defendant actually to serve. Only the minimum sentence must satisfy this standard.

We also find no error in the trial court's consideration of disciplinary credits in resolving this statutory issue. Regular disciplinary credits are an appropriate consideration. *People v Rushlow,* 437 Mich 149, 155; 468 NW2d 487 (1991). Because defendant was incarcerated after December 30, 1982, and assault with intent to commit murder is a Proposal B offense, the regular disciplinary credit to be considered in this case is five days each month. *Rushlow,* p 155, n 7, MCL 800.33; MSA 28.1403, and MCL 791.233b; MSA 28.2303(3).

Factually, the record shows that defendant was about thirty years old when first incarcerated in prison on July 8, 1988, with credit for 232 days served. This initial date of prison incarceration, rather than the date of resentencing, is the proper date for calculating the effect of disciplinary credits on defendant's minimum sentence. *Moore II, supra,* p 249, n 1.

Therefore, computing defendant's first possible parole date based upon defendant's beginning to serve his prison sentence on July 8, 1988, we find that defendant will be in his early nineties when first eligible for parole. This places defendant at an age slightly higher than the defendant in *Rushlow, supra,* will be when first eligible for parole. The defendant in *Rushlow, supra,* will be eighty-seven years old when first eligible for parole. In

approving the sentence in *Rushlow, supra,* p 156, our Supreme Court ruled:

> Inasmuch as it is permissible to consider the possible effect of disciplinary credits, we agree with the Court of Appeals that the defendant's 75- to 150-year sentence does not violate the principles set forth in *Moore.* The deficiencies that were present in *Moore* are not present here. The defendant has a reasonable prospect of actually serving his sentence. He has not been given an order that is impossible to obey.

Taking judicial notice of ever increasing life expectancies, *People v Holland,* 179 Mich App 184, 197; 445 NW2d 206 (1989), and applying the standards in *Moore I, supra,* and *Rushlow, supra,* we likewise find no statutory error in this case. We hold that, in imposing the sentence of 75 to 150 years at the resentencing hearing, the trial court fashioned a sentence that defendant has a reasonable prospect of actually serving. Accordingly, the sentence is affirmed.

Affirmed.

GRIBBS, J., concurred.

HOOD, J. *(concurring in part and dissenting in part).* I must respectfully dissent from that portion of the majority opinion that concludes that this is a sentence that the defendant can reasonably be expected to serve. This appears to be yet another case in which a trial court, with this Court's approval, seems determined to ascertain the limits to which our Supreme Court's ruling in *People v Moore,* 432 Mich 311; 439 NW2d 684 (1989), hereafter *Moore I,* can be pushed without risk of reversal. The trial court quite clearly sought to sentence defendant in this case to nonparolable

life imprisonment, and it stated at the sentencing hearing that "no society should have a fear or worry about (defendant) ever again." I in no way condone the bestial and inhumane behavior so graphically set forth in the majority opinion. I am nonetheless convinced that the result reached in this case pushes us beyond the pale of reason into the lap of ludicrousness.

The majority opinion in *Moore I, supra,* p 329, concluded:

> For the reasons stated earlier in this opinion, we hold that a "term of years" must be an indeterminate sentence less than life. It must be something that is reasonably possible for a defendant actually to serve.
>
> We decline, however, to adopt either a rigid cap on indeterminate sentences or a rule that a trial court must make a factual determination of a particular defendant's actual life expectancy. Otherwise, the trial court would not only find itself evaluating a defendant's actual state of health, but would find itself reviewing the life expectancies of demographic subgroups, family health histories, and behavioral risks of acquiring certain illnesses, such as cancer and heart disease.
>
> Instead, we simply direct the trial court to fashion a sentence that a defendant in his mid- to late-thirties has a reasonable prospect of actually serving."

Defendant in this case was born in May of 1958 and was thirty years of age at the time of sentencing. Although the trial court made no specific findings regarding when defendant would be eligible for parole if the effect of disciplinary credits is considered, computation of the effect of regular disciplinary credit for defendant's Proposal B conviction, commencing when defendant was first incarcerated in prison in July of 1988, indicates that

defendant will not be eligible for parole until he is in his nineties. See *People v Moore,* 188 Mich App 244; 469 NW2d 34 (1991), hereafter *Moore II.*

The "longest" sentence approved by published case law has been a sentence allowing the defendant to be eligible for parole at the age of eighty-seven. *People v Rushlow,* 437 Mich 149; 468 NW2d 487 (1991); *Moore II, supra.* As "guidance" on this statutory issue, the trial court in this case gave some consideration to our Supreme Court's denial of an application for leave to appeal or other relief in *People v Prong,* unpublished opinion per curiam of the Court of Appeals, decided September 28, 1988 (Docket No. 104568), lv den 433 Mich 860 (1989). This is an unacceptable approach, because a decision to deny leave to appeal has no precedential value, *Clink v Steiner,* 162 Mich App 551, 556; 413 NW2d 45 (1987).

The trial court's analysis simply provides no basis for upholding the statutory validity of the sentence. And neither the arguments presented nor case law prove any real guidance in resolving this issue.

As noted in Justice LEVIN's separate opinion in *Rushlow, supra,* pp 158-159, "[n]either the Court of Appeals nor the majority in this Court states on what basis it has been concluded that it is reasonably possible for Rushlow to live to the age of eighty-seven years." Similarly, no basis is presented here for the conclusion that defendant can survive into his nineties. Other cases have approved the use of standard mortality tables, *People v Hopson,* 178 Mich App 406, 415; 444 NW2d 167 (1989)[1] or judicially noticed increasing life expec-

[1] The United States National Center of Health Statistics, 1986, indicates that a thirty-year-old black male has a life expectancy of 38.5 years, and a white male of the same age a life expectancy of 44.2 years. The Michigan statutory mortality tables, MCL 500.834; MSA

tancies, *People v Holland,* 179 Mich App 184; 445
NW2d 206 (1989). The panel in *Holland,* p 197,
stated, "We, however, do take judicial notice that,
with ever increasing life expectancies, many citi-
zens of our state live to the age of eighty-three and
beyond."

Although the evidentiary rules do not apply to
sentencing proceedings, MRE 1101, the rule gov-
erning the judicial notice of adjudicative facts,
MRE 201, provides the requisite guidance regard-
ing when it is appropriate to take judicial notice of
facts. Under MRE 201(b), the facts must not be
subject to reasonable dispute. Aside from specula-
tion, there is no basis for a conclusion that prison-
ers in this state do in fact live well into their
nineties. Neither *Rushlow* nor *Moore I* can be read
as eliminating the requirement that the minimum
sentence be one that the defendant has a *reason-
able* prospect of actually serving. I am unaware of
any facts from which it can be inferred that a
person of defendant's age has a reasonable pros-
pect of actually serving his sentence. It is one
thing to say that there are citizens of this state
who live into their nineties. It is quite another to
quantify that number, by judicial notice, so as to
reasonably conclude that someone of defendant's
age has a reasonable prospect of actually serving a
minimum sentence into his nineties.[2]

Thus, while *Moore I, supra,* is clear in its direc-
tive that it does not establish a rigid age cap with
regard to the minimum sentence, I conclude that a
consideration of the existing record, combined with
the parties' arguments on appeal, provides only
speculation on the question whether defendant has

24.1834 indicates that a thirty-year-old male has a life expectancy of
41.25 years.

[2] No documentation whatsoever has been presented to indicate to
what age prisoners may reasonably be expected to live.

a reasonable prospect of actually serving his minimum sentence. Given the lack of any basis, in fact or case law, to establish the statutory validity of defendant's sentence, I would rule that defendant must again be resentenced.