PEOPLE v LeMARBE (AFTER REMAND)

Docket No. 137155. Submitted March 4, 1993, at Lansing. Decided
August 2, 1993, at 9:05 A.M. Leave to appeal sought.

Richard LeMarbe was convicted by a jury in the Oakland Circuit
Court, Jessica R. Cooper, J., of second-degree murder and
possession of a firearm during the commission of a felony. He
was sentenced to forty to eighty years' imprisonment for the
murder conviction and two years' imprisonment for the felony-
firearm conviction. He appealed. The Court of Appeals, SAW-
YER, P.J., and MURPHY, J. (MICHAEL J. KELLY, J., concurring),
affirmed and remanded for resentencing, finding that the trial
court failed to respond to the defendant's objections to the
scoring of the sentencing guidelines. Unpublished opinion per
curiam of the Court of Appeals, decided September 5, 1990
(Docket No. 112396). On remand, the defendant was sentenced
to the same terms of imprisonment. The defendant appealed.

After remand, the Court of Appeals held:

1. Although the Court of Appeals would find that the defen-
dant does not have a reasonable prospect of actually serving
the sentence imposed, even assuming the effect of regular
disciplinary credits, and for that reason would remand this
matter for resentencing, Administrative Order No. 1990-6 re-
quires that the Court follow the decision in People v Weaver
(After Remand), 192 Mich App 231 (1991), which affirmed a
sentence that would place Weaver in his early nineties before
being eligible for parole. The defendant in this case will be in
his early nineties before being eligible for parole.

2. The trial court erred in scoring Homicide Offense Variable
3 of the sentencing guidelines as though the defendant had a
premeditated intent to kill. The jury rejected the original
charge of first-degree premeditated murder, and the trial court
did not rely on information regarding the defendant's intent
that was not presented to the jury. Resentencing is required
under the correct guidelines.

3. Resentencing must be by a different judge in order to

REFERENCES

Am Jur 2d, Criminal Law §§ 542, 598-600, 606, 629.
See ALR Index under Indeterminate Sentence.

preserve the appearance of justice and to avoid needless waste and duplication.

Remanded.

CONNOR, J., concurring in the result, noted that, pursuant to *Weaver*, a prisoner in Michigan has a reasonable possibility of living to be at least ninety-three years old. Therefore, the defendant's sentence does not violate the holding of *People v Moore*, 432 Mich 311 (1989), that a term-of-years sentence must be something that is reasonably possible for a defendant to serve. Nevertheless, the trial court erred in scoring Homicide Offense Variable 3. The highest minimum sentence that the sentencing guidelines contemplate in this case is twenty-five years. Thus, the forty-year minimum sentence imposed is disproportionate, and the defendant must be resentenced. Because the trial judge twice has sentenced the defendant to prison for forty to eighty years, resentencing by a different judge is appropriate.

1. SENTENCES — INDETERMINATE SENTENCES — MINIMUM SENTENCES.

An indeterminate sentence must be one that the defendant has a reasonable prospect of actually serving, as measured by the minimum sentence.

2. SENTENCES — INDETERMINATE SENTENCES — MINIMUM TERMS.

An indeterminate sentence under which a defendant will attain the age of the early nineties before being eligible for parole is one that the defendant reasonably can be expected to serve.

3. SENTENCES — SENTENCING GUIDELINES — OFFENSE VARIABLES.

A sentencing court must score the sentencing guidelines' Homicide Offense Variable 3 consistent with a jury verdict unless the court has information that was not presented to the jury.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Michael J. Modelski,* Chief, Appellate Division, and *Thomas S. Richards,* Assistant Prosecuting Attorney, for the people.

*Faintuck, Shwedel & Wolfram* (by *William G. Wolfram*), for the defendant.

AFTER REMAND

Before: MICHAEL J. KELLY, P.J., and MARILYN KELLY and CONNOR, JJ.

MICHAEL J. KELLY, P.J. Following a jury trial, defendant was convicted of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to forty to eighty years' imprisonment and two years' imprisonment, respectively. He appealed to this Court, and we affirmed and remanded for resentencing on the basis that the trial court had failed to respond to defendant's objections to the scoring of the sentencing guidelines. Unpublished opinion per curiam, decided September 5, 1990 (Docket No. 112396). Subsequently, defendant was resentenced to the same terms. Defendant again appeals as of right.

At the time of the original sentencing, defendant was approximately fifty-four years old. Computation of the effect of regular disciplinary credits indicates that defendant will not be eligible for parole until he is in his early nineties. Defendant claims that he should be resentenced because it is not reasonably possible for him to serve the sentence imposed.

Under the indeterminate sentence provisions, a sentencing court may not impose a term of years of imprisonment that has the effect of avoiding eligibility for parole. *People v Moore,* 432 Mich 311, 323-324; 439 NW2d 684 (1989). An indeterminate sentence must be one that the defendant has a reasonable prospect of actually serving, as measured by the minimum sentence. *Id.* at 329. We do not believe that defendant has a reasonable prospect of actually serving the sentence imposed, even assuming regular disciplinary credits. *Id.; People v Rushlow,* 437 Mich 149; 468 NW2d 487 (1991). Because we believe the entire interval between

defendant's minimum and maximum sentence is virtually certain to occur after his death, we would remand this matter for resentencing but for this Court's recent decision in *People v Weaver (After Remand)*, 192 Mich App 231; 480 NW2d 607 (1991).

The *Weaver* Court affirmed a seventy-five-year minimum sentence imposed on a defendant who was approximately thirty years old. The Court concluded that Weaver could reasonably be expected to serve a sentence that would place him in his early nineties before he would be eligible for parole. Although we consider this result spurious, unfortunately we are constrained under Administrative Order No. 1990-6 to follow the *Weaver* decision. We are following *Weaver* only because we are required to do so. Otherwise, for the same reasons as those set forth in Judge Hood's dissenting opinion in *Weaver,* we would find that there is no empirical basis for a conclusion that prisoners in this state are likely to live well into their nineties, and we would hold that defendant does not have a reasonable prospect of actually serving his minimum sentence. The result reached in this case, as noted by Judge Hood in *Weaver, supra* at 236, "pushes us beyond the pale of reason into the lap of ludicrousness."

Defendant also challenges the scoring of the sentencing guidelines' premeditation and deliberation points under Homicide Offense Variable (ov) 3. The trial court scored the variable at fifty points, signifying a premeditated intent to kill. However, we note that the instructions to ov 3 in the Michigan Sentencing Guidelines (2d ed), p 77, provide that the sentencing judge "must score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." The jury rejected the charge of first-degree premeditated murder and convicted defen-

dant of the lesser-included offense of second-degree murder. The trial court mentioned no information regarding defendant's intent that was not presented to the jury. Therefore, the trial court erred in not following the guidelines' instruction to score ov 3 at 25 points. Hence, resentencing is required under the correct guidelines.

Resentencing shall be conducted by a different judge in order to preserve the appearance of justice and to avoid needless waste and duplication. *People v Evans,* 156 Mich App 68, 72; 401 NW2d 312 (1986); *People v Spalla,* 147 Mich 722, 727; 383 NW2d 105 (1985).

Remanded for resentencing by a different judge. We do not retain jurisdiction.

MARILYN KELLY, J., concurred.

CONNOR, J. *(concurring).* I concur in the result reached by the majority, albeit for different reasons.

The punishment for second-degree murder in Michigan is imprisonment for life, or any term of years. MCL 750.317; MSA 28.549. In *People v Moore,* 432 Mich 311, 329; 439 NW2d 684 (1989), our Supreme Court held that a term-of-years sentence must be reasonably possible for a defendant to actually serve. *People v Rushlow,* 437 Mich 149, 154-156; 468 NW2d 487 (1991), decided that it is proper to take into account regular disciplinary credits when reviewing a sentence under *Moore.*[1]

---

[1] I believe our Supreme Court should reconsider its decision in *Moore.* See *People v Mitchell,* 428 Mich 364, 370; 408 NW2d 798 (1987). The principle of proportionality announced in *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), and the use of the sentencing guidelines in assessing proportionality adequately protect defendants from arbitrary and unfairly harsh sentences. Other artificial limitations placed on sentencing discretion should be disposed of. If our statutes give a sentencing court tools with which to fashion a sentence that is, in effect, a life sentence with no possibility of parole,

The briefs reflect some confusion about how to take regular disciplinary credits into account. For Proposal B offenses and for crimes committed on or after April 1, 1986, prisoners are eligible for five days of regular disciplinary credits for every month actually served. MCL 800.33(3), (5); MSA 28.1403(3), (5). Taking into account leap years, the average year is 365.25 days long. With the sixty days of regular disciplinary credits a prisoner can receive, a prisoner can move an average of 425.25 days closer to being eligible for parole each year. Therefore, multiplying the minimum sentence by the ratio of actual days served to total days credited ($365.25 \div 425.25$ or $0.8589$) produces an estimate of what portion of a minimum sentence a prisoner will have to serve before being eligible for parole, taking into account regular disciplinary credits.

The *Moore* Court rejected a one hundred-year minimum sentence imposed on a defendant almost thirty-five years old. Taking into account regular disciplinary credits, Moore would have had to serve eighty-five years and eleven months of his sentence before he would have been eligible for parole. Thus, we know from this decision that

and if, considering the nature of the offense and the background of the offender, it would be appropriate to impose such a sentence, a trial court should be allowed to do so.

Moreover, as a result of *Rushlow,* trial courts routinely consult "good time charts" that carefully calculate the amount of regular disciplinary credits defendants can accumulate and factor the reduction into their sentence to ensure that a defendant they perceive to be particularly dangerous or who has committed an exceptionally offensive crime will not be eligible for parole until he has at least survived his ninetieth birthday. Review on appeal for a violation of *Moore* now consists of a mathematical exercise in futility to ascertain whether the trial court failed to add or subtract correctly.

Finally, as is noted in footnote 4, *infra,* a minimum sentence a defendant has a one-in-twelve chance of serving does not violate *Moore.* Thus, the decision in *Moore* expends scarce judicial resources on a question that it is quite unlikely will make any difference to anyone.

prisoners in Michigan do not have a reasonable possibility of living to be 120 years old.[2]

The *Rushlow* Court affirmed a seventy-five-year minimum sentence imposed on a defendant twenty-six years old. Taking into account regular disciplinary credits, Rushlow will have to serve sixty-four years and five months of his sentence before being eligible for parole. Thus, we know from this decision that our Supreme Court believes that prisoners in Michigan have a reasonable possibility of living to be at least ninety years old.[3] The eighty-seven-year figure that is frequently mentioned in discussions of *Rushlow* is not correct, because that figure takes into account "all possible disciplinary credits" including special disciplinary credits that the Supreme Court decided could not be considered. *Rushlow, supra* at 154.

In *People v Weaver (After Remand),* 192 Mich App 231; 480 NW2d 607 (1991), this Court affirmed a seventy-five-year minimum sentence imposed on a defendant who was about thirty years old. Weaver will have to serve sixty-four years of his minimum sentence. Taking into account credit for time served before conviction, Weaver will be at least ninety-three before being eligible for parole. Under Administrative Order No. 1990-6, we are bound by *Weaver* to find that prisoners in Michigan have a reasonable possibility of living to be at least ninety-three years old.[4]

---

[2] This is not surprising. With apologies to Methuselah, only once in human history has it been verified that a person lived to celebrate his 120th birthday. *Guinness Book of Records* (New York: Bantam Books, 1993), pp 154-158.

[3] According to my calculations based on the United States population mortality table found in the Tables volume of MCLA (1993 Supp), pp 71-72, a person twenty-six years old has about a one-in-seven chance of living to his ninetieth birthday.

[4] According to my calculations based on the United States population mortality table found in the Tables volume of MCLA (1993 Supp), pp 71-72, a person thirty years old has about a one-in-twelve chance of living to his ninety-third birthday.

Taking regular disciplinary credits into account, defendant will be eligible for parole after serving less than thirty-four years and five months of his forty-year minimum sentence. Because he first had to serve two years for the felony-firearm conviction, defendant did not actually begin serving time for his murder conviction until he was fifty-five or fifty-six. This means that he will likely be eligible for parole before his ninety-second birthday. Consequently, following *Weaver* as I must, I find no violation of *Moore, supra.*[5]

Defendant also challenges the trial court's scoring of the sentencing guidelines' Homicide Offense Variable (ov) 3. The trial court scored the variable at fifty points, signifying a premeditated intent to kill. The scoring instructions state:

> The sentencing judge must score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury. [Michigan Sentencing Guidelines (2d ed), p 77.]

In this case, the trial court had no information regarding defendant's intent that was not presented to the jury. The jury rejected the charge of first-degree premeditated murder and convicted defendant of the lesser-included offense of second-degree murder. Therefore, the trial court erred in not following the guidelines' instructions and scoring ov 3 at 25 points. Contrary to the trial court's assertion, the instructions do not make it impossible for someone convicted of second-degree murder to receive fifty points. Such a score is possible for convictions based on a guilty plea, a bench trial verdict, or even a jury verdict when the trial court

[5] According to my calculations based on the United States population mortality table found in the Tables volume of MCLA (1993 Supp), pp 71-72, a person fifty-six years old has about a one-in-nine chance of living to his ninety-second birthday.

is privy to information that the jury did not have before it.

In *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), our Supreme Court decided that sentences are to be reviewed for their proportionality, and that the sentencing guidelines are the best barometer available to assess proportionality. Properly scored, the highest minimum sentence the guidelines contemplate in this case is twenty-five years, considering the nature of the offense and defendant's background. I find nothing remarkable about this defendant or his crime that would justify the trial court treating him more harshly than the courts of this state treat other similarly situated second-degree murderers. Consequently, I find the sentence disproportionate, and agree that defendant must be resentenced.

Defendant has asked to be resentenced by a different judge. The trial judge has twice sentenced defendant to prison for forty to eighty years, and this Court has twice ordered defendant to be resentenced. Under the circumstances, I agree that it is appropriate to grant defendant's request and order defendant to be resentenced by a different judge.