COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARIO WILLIS,

        Defendant-Appellant.

UNPUBLISHED
August 11, 2015

No. 320659
Wayne Circuit Court
LC No. 09-028750-FC

Before: HOEKSTRA, P.J., and JANSEN and METER, JJ.

PER CURIAM.

Defendant was convicted by a jury of second-degree murder, MCL 750.317, and arson of a dwelling house, MCL 750.72. Defendant was originally sentenced to 500 to 750 months' imprisonment for the second-degree murder conviction and 10 to 20 years' imprisonment for the arson of a dwelling house conviction. Defendant appealed to this Court, which held that the trial court erred in failing to justify the extent of its departure from the sentencing guidelines range and remanded the case to the trial court for resentencing. See *People v Willis*, unpublished opinion per curiam of the Court of Appeals, issued November 1, 2012 (Docket No. 298643), p 20. Defendant was resentenced to 500 to 750 months' imprisonment for the second-degree murder conviction and 10 to 20 years' imprisonment for the arson of a dwelling house conviction. Defendant now appeals as of right from his resentencing. We vacate defendant's sentences and remand for resentencing by a different trial judge.

This case arises from an incident in which defendant paid his employee, Darian Dove, to set fire to a house owned by Megan Daniel (Megan), defendant's girlfriend at the time of the incident. The house was damaged in a previous fire, and Megan received insurance proceeds in order to repair the damage from the first fire. The second fire resulted in the death of Detroit Firefighter Walter Harris.

I. SENTENCING GUIDELINES DEPARTURE

Defendant first argues that the trial court erred when it sentenced him above the sentencing guidelines range and that he is entitled to resentencing by a new trial judge. We agree.

The trial court's reasons for departing from the sentencing guidelines range are reviewed for clear error. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). "A finding is not

-1-

clearly erroneous if there is any evidence to support it." *People v Portellos*, 298 Mich App 431, 452; 827 NW2d 725 (2012). The trial court's determination that the reasons for departure are objective and verifiable is reviewed as a matter of law. *Smith*, 482 Mich at 300. The extent of the departure and the issue whether the trial court's reasons for the departure are sufficiently substantial and compelling to justify departure is reviewed for an abuse of discretion. *Id*. "A trial court abuses its discretion if the minimum sentence imposed falls outside the range of principled outcomes." *Id*.

In general, a trial court must sentence a defendant within the minimum sentencing guidelines range. See MCL 769.34(2). However, a trial court may depart from the sentencing guidelines range if the court has a substantial and compelling reason for the departure and articulates the reason on the record. See MCL 769.34(3). There are substantial and compelling reasons that justify departure from the sentencing guidelines range only in exceptional cases. *Smith*, 482 Mich at 299. The reasons for the departure must be objective and verifiable. *Id*. "They must be of considerable worth in determining the length of the sentence and should keenly or irresistibly grab the court's attention." *Id*. The reasons "must be based on actions or occurrences external to the minds of those involved in the decision, and must be capable of being confirmed." *People v Horn*, 279 Mich App 31, 43 n 6; 755 NW2d 212 (2008). Additionally, the trial court cannot depart from the sentencing guidelines on the basis of " 'an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight.' " *Smith*, 482 Mich at 300 (citation omitted).

"For a departure to be justified, the minimum sentence imposed must be proportionate to the defendant's conduct and prior criminal history." *Smith*, 482 Mich at 300. The sentence must be proportionate with regard to the seriousness of the offense that the defendant committed and to the particular defendant considering his criminal record. *Id*. at 305. The trial court must articulate the justification for the *particular* departure from the sentencing guidelines range. *Id*. at 303. The trial court must explain on the record the connection between the reasons for the sentencing departure and the extent of the sentencing departure. See *id*. at 304. The court must also articulate why the sentence is more proportionate to the crime than a sentence within the sentencing guidelines range would have been. *Id*. This Court cannot exercise its judgment regarding the justification for the departure in the place of the trial court. *Id*. at 304.

## A. REASONS FOR DEPARTURE

The trial court erred when it failed to articulate whether the reasons it stated on the record were the reasons for the departure. "[O]nce an original sentence is vacated, the case is placed in a presentence posture." *People v Davis*, 300 Mich App 502, 509; 834 NW2d 897 (2013), abrogated in part on other grounds by *People v Hardy*, 494 Mich 430 (2013) (recognizing the correct standard of review for a trial court's factual findings under the sentencing guidelines). "As a result, at resentencing, 'every aspect of the sentence is before the judge de novo[.]' " *Id*. (citation omitted; alteration in original).

The trial court articulated three reasons before it rendered sentence: (1) the "unicity" of the offense with the prior fire, (2) the foreseeability of harm, and (3) the duty of society and of

the trial court to protect first responders. The trial court did not clarify whether these concepts were the reasons for the departure from the sentencing guidelines or the reasons why the sentence imposed was proportionate to the offense. The trial court erred when it failed to clearly articulate whether the reasons it stated on the record were the reasons for exceeding the sentencing guidelines range. Although this Court held that the reasons for departure that the trial court articulated during defendant's first sentencing were substantial and compelling, as well as objective and verifiable, this Court remanded the case for resentencing *and* for an explanation of the extent of the sentencing guidelines departure. See *Willis*, unpub op at 20. Therefore, the trial court erred when it failed to articulate whether the concepts it stated were the reasons for the departure or the justification for the extent of the departure since every aspect of the sentencing was in front of the court de novo. See *Davis*, 300 Mich App at 509.

To the extent that the reasons the trial court stated on the record were the reasons for departing from the sentencing guidelines range, only two of the three reasons were objective and verifiable. First, the foreseeability of harm to Harris was a substantial and compelling reason to depart from the sentencing guidelines and was objective and verifiable based on this Court's prior holding. The law of the case doctrine provides, "[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *People v Fisher*, 449 Mich 441, 444-445; 537 NW2d 577 (1995) (citation and quotation marks omitted; alteration in original), overruled in part on other grounds by *People v Houthoofd*, 487 Mich 568 (2010). However, "[p]articularly in criminal cases, the law of the case doctrine is not inflexible and need not be applied if it will create an injustice." *People v Phillips (After Second Remand)*, 227 Mich App 28, 33; 575 NW2d 784 (1997).

This Court held in the prior appeal that the foreseeability of the risk of harm to Harris was objective and verifiable and could "keenly and irresistibly grab the court's attention." *Willis*, unpub op at 19. Therefore, the foreseeability of harm to Harris was a proper factor for the court to consider based on this Court's prior holding. See *Fisher*, 449 Mich at 444-445. An injustice will not result from application of the law of the case doctrine since the foreseeability of harm stems from actions and occurrences external to the minds of those involved in the decision, and it is capable of being confirmed. See *Horn*, 279 Mich App at 43 n 6; *Phillips (After Second Remand)*, 227 Mich App at 33.

The unicity of the offense with the first fire was also a substantial and compelling reason to depart from the guidelines because the factor took into account defendant's financial motivation for setting the fires. See *Smith*, 482 Mich at 299. The factor was also objective and verifiable since the factor is external to the minds of those involved in the decision and capable of being confirmed. See *Horn*, 279 Mich App at 43 n 6. However, the trial court's opinion that there is a societal duty to protect first responders was not based on actions or occurrences external to the minds of those involved, and it cannot be confirmed. See *id*. Therefore, the trial court erred when it considered the duty of society and the court to protect first responders since the factor was not objective and verifiable. See *id*.

## B.  ACCURACY OF THE FACTS UNDERLYING THE DEPARTURE

Defendant argues that the trial court erred when it relied on incorrect facts to justify its departure from the sentencing guidelines range.  Defendant challenges the court's statements at resentencing that the premises were severely damaged in the first fire and that defendant was greatly compensated with regard to the first fire.  Defendant also argues that the jury did not find him guilty of a crime with regard to the first fire.  However, the court did not rely on inaccurate facts in departing from the sentencing guidelines range.

Jessie Lamp, Jr., an insurance adjuster, testified at trial that there was smoke damage, water damage, and damage to the floors, windows, and light fixtures as a result of the first fire. The trial court did not err in categorizing this damage as "severe."  See *Portellos*, 298 Mich App at 452.  Additionally, Dove testified that defendant aided him in setting the first fire, which supports the trial court's statement that defendant participated in the first fire.  See *id*.  Although there was testimony that Megan cashed the insurance check from the first fire, there was also evidence to indicate that defendant was financially involved with the property.  Brian Billops, a Michigan Basic Property Insurance Association employee, testified that the insurance company paid an insurance claim of approximately $26,000.  The check was endorsed by Megan and by the adjusting company that she hired to represent her.  According to Laura Furr, an employee of Saxton Mortgage, Megan cashed and endorsed the check.  However, Billops also testified that Megan did not pay for the application with regard to the claim.  Additionally, Lamp did not know whether defendant or Megan cashed the check.  In addition, Furr testified that she was authorized to talk with defendant regarding the mortgage on the property.  Dove explained that defendant wanted to start the initial fire in order to obtain money from the insurance company and because of the mortgage on the property.  Defendant told Dove that the property was defendant's property.  Thus, there was evidence that defendant received a benefit from the insurance proceeds.  Even assuming that defendant did not receive the insurance money from the first fire, the trial court also pointed out that defendant had actual knowledge that the firefighters were heading to the scene of the second fire when he was sitting in a monster truck outside of a gas station on the firefighters' route, which also indicated that the harm was foreseeable. Therefore, there was evidence to support the court's findings.  See *id*.

Defendant also argues that the trial court erred when it failed to consider his postsentencing rehabilitation and conduct.  "[S]entencing must be individualized and tailored to the particular circumstances of the case and the offender at the time of sentencing."  *People v Hemphill*, 439 Mich 576, 580; 487 NW2d 152 (1992) (citation and quotation marks omitted). The court did not state on the record that defendant's postsentencing rehabilitation and conduct were inappropriate factors for the court to consider.  Defendant fails to explain why the trial court was required to consider his postsentencing rehabilitation and conduct on the record. Therefore, there is no indication that the court failed to consider defendant's characteristics and the circumstances surrounding defendant's resentencing.  See *id*.

## C.  JUSTIFICATION FOR THE EXTENT OF DEPARTURE

Nevertheless, the trial court failed to justify the extent of the departure.  As stated above, the trial court discussed three concepts before rendering sentence: (1) the unicity of the offense with the event of the first fire, (2) the foreseeability of the harm to Harris, and (3) the duty of

society and of the trial court itself to protect first responders. The trial court failed to justify the particular departure since the court failed to explain the connection between the reasons for the sentencing guideline departure and the extent of the departure. See *Smith*, 482 Mich at 303. The trial court also failed to articulate why the sentence was more proportionate to the crime than a sentence within the sentencing guidelines range would have been. See *id*. at 304. The trial court failed to explain how the sentence was proportionate to the seriousness of the offense and defendant's criminal record. See *id*. at 305. Instead, the court incorrectly articulated the standard as whether the court treated defendant as it would have treated any other similarly-situated defendant. The trial court specifically disregarded the principal of proportionality when it stated, "And therefore, the issue of unicity, in my view, trumps the concern for proportionality with regard to this sentence." See *id*. at 304. Since proportionality is the standard for determining whether a departure is justified, the trial court erred. See *id*. Therefore, remand for resentencing is necessary since the court failed to articulate whether the reasons it stated on the record were the reasons for departure or the justification for the extent of the departure, the court relied on a factor that was not objective and verifiable, and the court failed to justify the extent of the departure.

## D. RESENTENCING BY A NEW TRIAL JUDGE

Resentencing by a different trial judge is warranted. This Court examines the following factors in determining whether resentencing before a different trial judge is warranted:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (citations and quotation marks omitted).]

In *People v LeMarbe (After Remand)*, 201 Mich App 45, 47, 49; 505 NW2d 879 (1993), this Court remanded the case for resentencing by a different trial judge after the defendant was twice sentenced by the same trial judge. This Court held that resentencing by a different trial judge was necessary to preserve the appearance of justice and to avoid waste and duplication. *Id*. at 49.

Resentencing by a different trial judge is warranted in this case since defendant was twice sentenced by the same trial judge. See *Hill*, 221 Mich App at 398; *LeMarbe (After Remand)*, 201 Mich App at 49. Resentencing by a different trial judge will preserve the appearance of justice since the trial court expressly rejected the principal of proportionality. See *Hill*, 221 Mich App at 398; *LeMarbe (After Remand)*, 201 Mich App at 49. Resentencing by a different trial judge will also avoid waste and duplication since the trial judge twice sentenced defendant incorrectly. See *Hill*, 221 Mich App at 398; *LeMarbe (After Remand)*, 201 Mich App at 49.

## II. PRIOR RECORD VARIABLES AND OFFENSE VARIABLES

Defendant next argues that the trial court erred when it assessed five points for prior record variable (PRV) 5. We agree. Defendant also argues that the trial court erred when it scored offense variable (OV) 1, OV 2, OV 3, and OV 19. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Additionally, "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

### A. PRV 5

PRV 5 governs prior misdemeanor convictions and prior misdemeanor juvenile adjudications. *People v Gibbs*, 299 Mich App 473, 485; 830 NW2d 821 (2013). MCL 777.55(1)(d) provides that five points should be assessed if the defendant has two or more prior misdemeanor convictions or prior juvenile adjudications. MCL 777.55(2)(a) provides that the court must consider "a prior misdemeanor conviction or prior misdemeanor juvenile adjudication only if it is an offense against a person or property, a controlled substance offense, or a weapon offense." MCL 777.55(2)(b) provides that the trial court must "[c]ount all prior misdemeanor convictions and prior misdemeanor juvenile adjudications for operating or attempting to operate a vehicle, vessel, ORV, snowmobile, aircraft, or locomotive while under the influence of or impaired by alcohol, a controlled substance, or a combination of alcohol and a controlled substance."

In *People v Hannan (After Remand)*, 200 Mich App 123, 128; 504 NW2d 189 (1993), this Court held that "a criminal conviction obtained in violation of a defendant's right to counsel cannot be used to enhance a sentence." This Court explained that a trial court cannot consider a prior misdemeanor conviction that was obtained without the presence of counsel or a valid waiver of the right to counsel. *Id*. This Court explained that the rationale behind the rule was that a conviction obtained without the presence of counsel is not sufficiently reliable to be considered in enhancing a sentence. *Id*. However, an indigent defendant is entitled to appointed counsel in a misdemeanor case only if the defendant is "actually imprisoned." *People v Reichenbach*, 459 Mich 109, 120; 587 NW2d 1 (1998). " '[A]ctual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment.' " *Id*. at 121 (citation omitted).

The trial court assessed five points for PRV 5. Defendant was previously convicted of operating a motor vehicle with a suspended license, MCL 257.904. According to the presentence investigation report (PSIR), a defense attorney was not present at the time of defendant's conviction and sentencing. Defendant was convicted by plea on November 5, 2003, and he paid a fine of $170. Defendant was not actually imprisoned for the offense since he only paid a fine of $170. See *Reichenbach*, 459 Mich at 120-121. Therefore, defendant did not have the right to counsel with regard to the offense, and the trial court did not err in considering the conviction in scoring PRV 5. See *id*.

Nevertheless, the trial court erred when it considered the prior misdemeanor conviction under PRV 5 because the crime does not constitute a crime against a person or property, a weapons offense, a controlled substance offense, or a crime regarding the operation or attempted operation of a vehicle while under the influence of or impaired by alcohol. See MCL 257.904; MCL 777.55(2)(a) and (b). It is not clear which other prior misdemeanor convictions the trial court considered when it assessed five points for PRV 5. However, the trial court erred when it considered another misdemeanor conviction since all of defendant's four other prior misdemeanor convictions involved operation of a motor vehicle with a suspended license or other traffic violations. None of the convictions involved crimes against persons or property, a weapons offense, a controlled substance offense, or the operation or attempted operation of a vehicle while under the influence of alcohol. See MCL 777.55(2)(a) and (b). Therefore, the trial court should have assessed zero points for PRV 5. See MCL 777.55(1)(f).

Regardless, the error did not affect the sentencing guidelines range. An error in the scoring of the offense variables does not require resentencing unless the error alters the appropriate sentencing guidelines range. See *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). In this case, the reduction of five PRV points would not have affected the sentencing guidelines range. The PRV total should have been 10 points instead of 15 points, but the error did not affect the PRV level. See MCL 777.61 (providing the sentencing guidelines range for the class of offenses under which defendant was convicted). Therefore, this error does not warrant resentencing. See *Stevens*, 306 Mich App at 628.

### B. OV 1 and OV 2

OV 1 governs the aggravated use of a weapon. *People v Morson*, 471 Mich 248, 251; 685 NW2d 203 (2004). MCL 777.31(1)(b) provides that 20 points are assessed for OV 1 when the victim is exposed to an incendiary device, among other devices and substances. MCL 777.31(2)(b) defines the term "incendiary device" as "gasoline or any other flammable substance, a blowtorch, fire bomb, Molotov cocktail, or other similar device." OV 2 governs "the lethal potential of a weapon possessed or used by a defendant during the commission of the offense." *People v Young*, 276 Mich App 446, 451; 740 NW2d 347 (2007). MCL 777.32(1)(b) provides that 15 points are assessed for OV 2 when the defendant uses an incendiary device, explosive device, or fully automatic weapon during the commission of the offense. MCL 777.32(3)(d) defines "incendiary device" as "gasoline or any other flammable substance, a blowtorch, fire bomb, Molotov cocktail, or other similar device."

The trial court assessed 20 points for OV 1 and 15 points for OV 2 at defendant's resentencing. This Court held that the trial court did not err in assessing 20 points for OV 1 and 15 points for OV 2 at the original sentencing since gasoline constitutes an "incendiary device." *Willis*, unpub op at 17. Thus, the law of the case doctrine applies to defendant's claim. See *Fisher*, 449 Mich at 444-445. Furthermore, application of the law of the case doctrine will not result in an injustice since the definition of an incendiary device with regard to OV 1 and OV 2 includes gasoline. See MCL 777.31(2)(b); MCL 777.32(1)(b); *Phillips (After Second Remand)*, 227 Mich App at 33.

## C. OV 3

OV 3 governs physical injury to the victim. *People v Armstrong*, 305 Mich App 230, 245; 851 NW2d 856 (2014). MCL 777.33(1)(c) provides that 25 points are assessed for OV 3 when "[l]ife threatening or permanent incapacitating injury occurred to a victim."

The trial court assessed 25 points for OV 3 at defendant's resentencing. This Court held in its opinion following defendant's original sentencing that the trial court's assessment of 25 points for OV 3 was supported by the Michigan Supreme Court's holding in *People v Houston*, 473 Mich 399; 702 NW2d 530 (2005). *Willis*, unpub op at 17. This Court held that it was bound to follow *Houston*. *Id*. This Court is bound by its prior decision under the law of the case doctrine. See *Fisher*, 449 Mich at 444-445. Furthermore, application of the law of the case doctrine to defendant's claim regarding OV 3 will not result in an injustice. In *Houston*, the Michigan Supreme Court held that the trial court properly assessed 25 points for OV 3 on the basis of life threatening or permanent incapacitating injury when the defendant shot the victim in the head, and the victim died. *Houston*, 473 Mich at 401-402, 407. "An elemental tenet of our jurisprudence, stare decisis, provides that a decision of the majority of justices of the Michigan Supreme Court is binding on lower courts." *People v Beasley*, 239 Mich App 548, 559; 609 NW2d 581 (2000). Therefore, the trial court correctly assessed 25 points for OV 3. See *Houston*, 473 Mich at 401-402, 407; *Phillips (After Second Remand)*, 227 Mich App at 33.

## D. OV 19

OV 19 governs the " 'threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services.' " *People v Hershey*, 303 Mich App 330, 342; 844 NW2d 127 (2013) (citation omitted). MCL 777.49(b) provides that 10 points are assessed when "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice."

In the opinion from the prior appeal in this case, this Court stated:

> Here, while the trial court's departure reason was not based on defendant's perjury, it did involve defendant's interference with the administration of justice through the presentation of perjured alibi testimony. While we question the trial court's failure to consider this factor under OV 19, the court reasonably could infer that defendant willfully presented Megan's perjured testimony at trial to avoid responsibility for the arson. Thus, we find no error in the trial court's finding that Megan committed perjury or in its use of this factor to determine defendant's sentence. [*Willis*, unpub op at 19.]

However, this Court instructed the trial court to "consider whether any involvement by defendant in orchestrating Megan's perjury should be scored under OV 19 and, if so, limit its consideration of this conduct as a basis for departure consistent with MCL 769.34(3)(b)." *Id*. at 19 n 5.

At resentencing, the trial court assessed 10 points for OV 19. The trial court based its decision on this Court's discussion of OV 19 with regard to Megan's perjured testimony and defendant's role in presenting the perjured testimony. Defendant argues that Megan did not commit perjury and that defendant identified her as a witness during his interview with Detroit

Police Lieutenant Chuck Simms. However, this Court stated that the trial court properly considered the fact that defendant willfully presented perjured testimony by Megan in order to avoid responsibility for the arson. *Willis*, unpub op at 19. Therefore, the trial court did not err in finding that Megan committed perjury or that defendant orchestrated the perjury when it assessed 10 points for OV 19. See *Fisher*, 449 Mich at 444-445.

Furthermore, application of the law of the case doctrine will not result in an injustice. Defendant refers to his interview with Lieutenant Simms to support his claim that he had a valid alibi defense. However, there is no indication in the record that the interview with Lieutenant Simms was admitted into evidence. See *Hardy*, 494 Mich at 438. Furthermore, defendant only stated in the interview that he went out to dinner with Megan on the night of the incident. Defendant did not state when he and Megan went out to dinner or what he and Megan did upon their return from dinner. In fact, defendant explained that he could not remember the details of that night other than the fact that he went out with Megan and returned home because he suffers from a closed head injury. Therefore, defendant's statement during the interview does not render application of the law of the case doctrine an injustice. See *Phillips (After Second Remand)*, 227 Mich App at 33.

## III. JUDICIAL FACT-FINDING

Defendant argues that the trial court erred when it engaged in unconstitutional judicial fact-finding. We disagree.

This Court reviews de novo issues of constitutional law. *People v Herron*, 303 Mich App 392, 399; 845 NW2d 533 (2013), lv held in abeyance 846 NW2d 924 (2014). In *Alleyne v United States*, 570 US ___, ___; 133 S Ct 2151, 2155; 186 L Ed 2d 314, 321 (2013), the United States Supreme Court held, "Mandatory minimum sentences increase the penalty for a crime. It follows, then, that any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." The Court distinguished the use of judicial fact-finding to increase a mandatory minimum sentence "from factfinding used to guide judicial discretion in selecting a punishment 'within limits fixed by law.' " *Id.* at ___ n 2; 133 S Ct at 2161 n 2; 186 L Ed 2d at 328 n 2 (citation omitted). In *Herron*, this Court held that a trial court may utilize judicial fact-finding to aid the court in exercising its sentencing discretion. *Herron*, 303 Mich App at 403. This Court reasoned:

> While judicial fact-finding in scoring the sentencing guidelines produces a recommended range for the minimum sentence of an indeterminate sentence, the maximum of which is set by law, it does not establish a *mandatory minimum*; therefore, the exercise of judicial discretion guided by the sentencing guidelines scored through judicial fact-finding does not violate due process or the Sixth Amendment right to a jury trial. [*Id.* at 403-404 (citation omitted).]

The trial court did not err when it considered defendant's criminal history or the offense variables since the trial court considered these factors in exercising its sentencing discretion. See *Herron*, 303 Mich App at 403-404. Accordingly, defendant's argument fails.

We vacate defendant's sentences and remand for resentencing by a different trial judge. We do not retain jurisdiction.


/s/ Kathleen Jansen
/s/ Joel P. Hoekstra