*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0388p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

—————————

ELISHA SHAYA,

          *Petitioner-Appellant,*

    *v.*

                            No. 08-4619

ERIC H. HOLDER, JR.,

          *Respondent-Appellee.*

On Appeal from the United States
Board of Immigration Appeals.
No. A 022 758 506.

Argued and Submitted:  October 6, 2009

Decided and Filed:  November 9, 2009

Before:  MARTIN, COLE, and KETHLEDGE, Circuit Judges.

—————————

## COUNSEL

**ARGUED:**  John W. Blakeley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.  **ON BRIEF:**  Mark Jacob Thomas, MARK JACOB THOMAS & ASSOCIATES, Chicago, Illinois, for Petitioner.  John W. Blakeley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

    MARTIN, J., delivered the opinion of the court, in which COLE, J., joined. KETHLEDGE, J. (p. 11), delivered a separate dissenting opinion.

—————————

## OPINION

—————————

    BOYCE F. MARTIN, JR., Circuit Judge.  Elisha Shaya seeks review of a Board of Immigration Appeals decision affirming an immigration judge's denial of his applications for asylum, withholding of removal, and deferral of removal under the Convention Against Torture.  Shaya was charged as removable as an "aggravated felon" due to his conviction for "assault with intent to do great bodily harm less than the crime of murder" under Michigan

law for which he received an indeterminate sentence of nine months to ten years. It is undetermined how long Shaya actually spent in prison. As an aggravated felon, Shaya was eligible only for a deferral under the Convention.

To be charged as an aggravated felon, Shaya must have been found guilty of "a crime of violence . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Using BIA precedent based on the sentencing regimes of other states, the immigration judge determined that Shaya was an aggravated felon, basing the calculation of "the term of imprisonment" on the potential maximum sentence imposed by the Michigan court. However, the determining factor should be the treatment of indeterminate sentences under the laws of the state where the sentence was handed down rather than by other states. Thus, for the purposes of Section 1101(a)(43)(F), indeterminate prison sentences in Michigan must be measured by the term actually served by the petitioner rather than by the maximum statutory sentence. Based on the other aggravated felony definitions included in Section 1101(43)(a), it is clear that Congress did not require the crimes-of-violence sentences to be measured by the maximum statutory sentence. Thus, when using Michigan indeterminate sentences as the predicate for classifying someone as an "aggravated felon", the term must be measured by the sentence actually served or the minimum sentence given, whichever is greater, as this better incorporates the judge's discretion and determinations than the statutory maximum term. However, the immigration judge never made a finding of fact regarding the length of time that Shaya actually served in prison. We therefore **VACATE** the BIA's decision and **REMAND** to the BIA to determine how long Shaya served in prison for his assault conviction. Should he be found to have served less than one year in prison, he should be held not to be an aggravated felon and therefore not removable.

I

### A.   Factual Background

Elisha Shaya is an Iraqi citizen, born in Iraq on July 1, 1955. He identifies himself as an Assyrian Christian. Shaya left Iraq in the late 1970s. From there he went to Greece, where he applied for refugee status in the United States based on prior mistreatment by the Iraqi government. Based on this application, he was granted refugee status under the Immigration and Nationality Act ("INA") Section 270 in December of 1980 and entered the

United States in 1981. He has not been back to Iraq since he entered the United States. On June 28, 1984, Shaya adjusted his immigration status to that of a legal permanent resident.

On September 1, 1992, after a non-jury trial, Shaya was convicted in the Detroit Recorder's Court of "assault with intent to do great bodily harm less than the crime of murder" under Mich. Comp. Laws § 750.84. The incident occurred in Detroit, Michigan after the complaining witness robbed Shaya's home and a fight ensued in another Detroit location. On October 16, 1992, Shaya received an indeterminate sentence of nine months to ten years in prison, with credit given for six days served. He was released on or about October 10,1993, having served between nine and twelve months in prison, though the Government has been unable to prove the exact amount of time served.

Nearly twelve years after this conviction, on March 15, 2004, immigration authorities commenced removal proceedings against Shaya pursuant to 8 U.S.C. § 1229a. In a subsequent application for asylum and withholding from removal, Shaya explained that he feared removal based on the treatment that he and his family had received in Iraq because of their Assyrian Christian heritage. Two short hearings were held before Immigration Judge Elizabeth A. Hacker on June 2, 2004, and April 13, 2005. A third hearing was held before IJ Marcia K. Nettles on September 18, 2006. Shaya was represented by counsel at all three hearings.

At the third hearing, IJ Nettles made findings regarding the types of relief which were available to Shaya based on the exhibits already entered into the record. First, based on the conviction records, the IJ found that Shaya was not eligible for a waiver under INA § 212(c), 8 U.S.C. § 1182(c), *repealed by* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 304(b), 110 Stat. 3009-546, 3009-597 (1996), because his assault conviction was not the result of a plea deal. Next, citing Board of Immigration Appeals precedent and 8 U.S.C. § 1231(b)(3), the IJ found that Shaya was ineligible for asylum and withholding of removal under both the INA and the Convention Against Torture because his conviction and nine-month-to-ten-year sentence qualified as an aggravated felony and a particularly serious crime for immigration purposes. The IJ rejected Shaya's argument that his sentence should be measured by the actual amount of time he served in prison. To support her conclusion, the IJ cited BIA precedent from other states that

an indeterminate sentence is measured by its maximum term and the language of 8 U.S.C. § 1231(b)(3) referencing sentencing, not time served, for applications for withholding of removal. Because of these findings, the IJ stated that the only relief available to Shaya was a deferral under the Convention, and this was the only claim that the IJ considered on the merits.

### B.     Immigration Judge's Decision

First, the IJ found by clear and convincing evidence that Shaya was removable due to his 1992 conviction. Next, the IJ reaffirmed her earlier rulings that: (1) Shaya was ineligible for INA § 212(c) relief because his conviction was not based on a guilty plea; (2) Shaya was ineligible for asylum because he was convicted of a "particularly serious crime" under 8 U.S.C. § 1158(b)(2)(A)(ii); and (3) Shaya was ineligible for withholding of removal under the INA or the Convention because he had been convicted of a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii). In support of this, the IJ found that, for immigration purposes, "indeterminate sentences . . . are sentence[s] for the maximum potential." Based on these findings, the IJ concluded that the only form of relief for which Shaya was eligible to be considered was a deferral of removal under the Convention.

In denying Shaya's deferral claim under the Convention, the IJ found that Shaya's application and testimony were not credible and that, even accepting his testimony as true, Shaya had not established that it was more likely than not that he would be tortured if removed to Iraq.

### C.     Board of Immigration Appeals Decision

The BIA found that the IJ's factual findings were not clearly erroneous and adopted and affirmed the IJ's decision to order Shaya's removal. The BIA adopted the IJ's conclusion and related analysis that Shaya was an aggravated felon under 8 U.S.C. § 1101(a)(43)(F) and that he was therefore statutorily ineligible for asylum or withholding of removal. The BIA further adopted and affirmed the IJ's denial for a deferral under the Convention. The BIA also rejected all other claims that Shaya raised on appeal.

II

We generally have jurisdiction to review final orders of removal issued by the BIA. *See* 8 U.S.C. § 1252(a). However, because Shaya's removability is based on a finding that he was an alien convicted of an aggravated felony, our review is limited to constitutional claims and questions of law. 8 U.S.C. §1252(a)(2)(C)-(D); *see Patel v. Ashcroft*, 401 F.3d 400, 407 (6th Cir. 2005). This review includes determining "whether the alien's crime was an aggravated felony." *Id.*

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination. To the extent that the BIA adopted the immigration judge's reasoning, however, we also review the immigration judge's decision." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citation omitted).

On petitions from BIA decisions, we review questions of law *de novo*, but "substantial deference is given to the BIA's interpretation of the INA and accompanying regulations." *Id.* However, this deference does not extend to the BIA's determination that Shaya is an aggravated felon. We review "*de novo* the BIA's determination 'that a particular state conviction amounts to an aggravated felony conviction . . . because such a conclusion depends upon interpreting state statutes . . . unrelated to immigration.'" *Patel*, 401 F.3d at 407. In short, we owe *Chevron*-type deference to BIA interpretations of its own empowering statutes and regulations only, not to BIA interpretations of other state or federal laws.

III

We must first determine whether Shaya is subject to removal as charged, as an "alien who [has been] convicted of an aggravated felony at any time after admission." 8 U.S.C. § 1227(a)(2)(A)(iii). "Aggravated felony" is defined by a statute providing a list of qualifying offenses, including "a crime of violence . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F).[1] Thus, we must look to whether Shaya's sentence constitutes a term of imprisonment for at least one year. The language of

---

[1]Shaya does not dispute that his conviction for assault with intent to do great bodily harm less than murder constitutes a "crime of violence" under 18 U.S.C. § 16.

8 U.S.C. § 1101(a)(43)(F) is ambiguous as to whether "term of imprisonment" refers to the maximum sentence available for the particular offense, the maximum sentence imposed by the sentencing court, the minimum sentence imposed by the sentencing court, or the amount of time actually served by the petitioner in prison.

In holding that Shaya was an aggravated felon and could therefore be deported, the IJ stated: "Under governing Board precedent, it is clear that [Shaya] has been convicted of an aggravated felony for which he was sentenced to five years or more. Indeed, indeterminate sentences for Immigration purposes, are sentence[s] for the maximum potential." The BIA adopted the IJ's analysis on the issue. We have not previously determined how to measure an indeterminate sentence for immigration purposes.

The Government argues that the BIA's rule— that indeterminate sentences are measured by their maximum term—is entitled to *Chevron* deference as a permissible interpretation of the INA, and that such a finding is consistent with other circuits' holdings and the common-law understanding of such sentences. *See Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984). However, determining the length of Shaya's sentence is less an exercise in interpreting the INA provision than it is interpreting state sentencing law. Thus, these kinds of determinations by the BIA are not entitled to *Chevron* deference. Instead, we review the question *de novo* because a "determination 'that a particular state conviction amounts to an aggravated felony conviction . . . depends upon interpreting state statutes . . . unrelated to immigration.'" *Patel*, 401 F.3d at 407. Indeed, aside from the Tenth Circuit's anomalous decision in *Nguyen v. INS*, 53 F.3d 310, 311 (10th Cir. 1995), the decisions addressing this issue—both by other federal courts and by the BIA itself—primarily look to the law of the state of conviction. *See, e.g.*, *Bovkun v. Ashcroft*, 283 F.3d 166, 170-71 (3rd Cir. 2002) (looking to Pennsylvania law rather than BIA precedent in finding that a sentence of eleven-to-twenty-three months qualified as a term of imprisonment of "at least one year" ), *In re S–S–*, 21 I. & N. Dec. 900, 902 (BIA 1997) (finding that the term to which the respondent was sentenced was for the maximum potential sentence because,

under Iowa sentencing law, an incarcerated individual remains in the custody of the director of the Department of Corrections until the maximum term of the person's confinement has been completed or until released by order of the Board of Parole); *Matter of D–*, 20 I. & N. Dec. 827, 829 (BIA 1994) (finding that an alien's four-to-five-year sentence qualified as a five-year sentence under Massachusetts law because, "[t]he highest court of Massachusetts has adopted the position that an indeterminate sentence is considered to be a sentence for the maximum term imposed."); *Matter of Chen*, 10 I. & N. Dec. 671, 672-73 (BIA 1964) (treating a California indeterminate sentence as the maximum term because "[t]he crux of this case . . . is whether under California law the minimum or maximum limit of an 'indeterminate sentence' . . . is determinative.").

Thus, we agree with Shaya that an analysis of Michigan law must be at the center this discussion. The question of how Shaya's sentence should be measured is complicated by Michigan's "peculiar indeterminate sentencing structure." *Brown v. McKee*, No. 07-2223, 2009 WL 2031861, at *4 (6th Cir. July 15, 2009).

Under Michigan's indeterminate sentencing statute, first-time felony offenders are required to be given an indeterminate sentence and "[t]he maximum penalty provided by law shall be the maximum sentence . . . and shall be stated by the judge in imposing the sentence." Mich. Comp. Laws § 769.8.[2] While the state court has discretion in setting the minimum term, "the fixing of a maximum term . . . is nondiscretional and is merely a ministerial act to comply with the statute . . . ." *People v. Maxson*, 415 N.W.2d 247, 248 (Mich. Ct. App. 1987) (citations omitted); *see also People v. Drohan*, 715 N.W.2d 778, 790 (Mich. 2006) ("The maximum sentence is not determined by the trial court, but rather is set by law.") (footnote omitted).

Therefore, almost all sentences imposed by Michigan courts are for indeterminate terms and the sentencing court generally has no discretion in setting the maximum term that it must include in the sentence. Because the maximum term of a Michigan sentence will always be the maximum statutory term, measuring a Michigan sentence by its

---

[2]Shaya misguidedly reads this statute as meaning that Shaya was not actually sentenced to an indeterminate sentence because he was a first-time offender.

maximum term would thwart Congress's intent to measure some aggravated felonies by the statutory maximum and others, like crimes of violence, by the sentence actually imposed. *See Alberto-Gonzales v. INS*, 215 F.3d 906, 909 (9th Cir. 2000) ("Congress appears to have used the phrase 'term of imprisonment' to specifically refer to the actual sentence imposed. This precise distinction implies that Congress was aware of the difference between the statutory maximum penalty and the sentence actually imposed.") In making this distinction, Congress has indicated that for certain categories of crimes, including crimes of violence, the sentencing court's evaluation of the specific crime's seriousness (as reflected by the sentence imposed) should play a factor in whether it is considered an aggravated felony.

Michigan courts measure indeterminate sentences by the minimum sentence or the term actually served by the defendant. In *Lowe*, the state supreme court ruled that a statute targeting repeat drug offenders that allowed for a sentence to be enhanced to a "term not more than twice the term otherwise authorized" permitted the trial court to double both the maximum and minimum limits of the defendant's indeterminate sentence. *People v. Lowe*, No. 137284, 484 Mich. 718, 2009 WL 2475344, at \*2 (Mich. 2009). In doing so, the court examined the meaning of the word "term" under Michigan sentencing law.

> [U]nder Michigan's scheme of indeterminate sentencing and the courts' implementation of that scheme, the "term otherwise authorized" is not exclusively the minimum sentence *or* the maximum sentence, but it is the actual indeterminate sentence, which is defined by both the minimum and maximum limits for that sentence. In other words, the "period of time" that a defendant could potentially spend in prison lies somewhere between the minimum and the maximum allowable sentences, and accordingly those sentences operate in tandem to define the "term" for which a defendant has been sentenced.

*Id.* at \*7. The court specifically rejected the argument, put forth by the defendant and in the dissent, that the "term otherwise authorized" referred only to the maximum sentence. *See id.* at \*20-38 (Cavanagh, J., dissenting).

The Michigan Supreme Court also focused on the importance of the minimum sentence when holding that a sentence for 100-200 years violated the indeterminate

sentencing act and directed the trial court to sentence the defendant either to a life sentence or to an indeterminate term that he "ha[d] a reasonable prospect of actually serving." *People v. Moore*, 439 N.W.2d 684, 693 (Mich. 1989). In applying *Moore*, lower appellate courts determined that it was the minimum sentence that was crucial in measuring whether the sentence was one that the defendant had a reasonable prospect of serving. *See, e.g.*, *People v. LeMarbe*, 505 N.W.2d 879, 880 (Mich. Ct. App. 1993) ("An indeterminate sentence must be one that the defendant has a reasonable prospect of actually serving, *as measured by the minimum sentence*.") (emphasis added); *People v. Weaver*, 480 N.W.2d 607, 608 (Mich. Ct. App. 1991) ("Only the minimum sentence must satisfy [the *Moore*] standard.").

The Michigan Supreme Court has further emphasized the fact that minimum sentences are where Michigan sentencing courts exercise discretion, but also that the parole board's discretion plays an important role in determining the sentence actually served:

> [T]here is no guarantee that an incarcerated person will be released from prison after the person has completed his or her minimum sentence. Ultimately, the parole board retains the discretion to keep a person incarcerated up to the maximum sentence authorized by the jury's verdict. Accordingly, because a Michigan defendant is always subject to serving the maximum sentence provided for in the statute that he or she was found to have violated, that maximum sentence constitutes the 'statutory maximum' as set forth in *Blakely*.

*People v. Drohan*, 715 N.W.2d 778, 791-92 (Mich. 2006), *see also People v. McCuller*, 739 N.W.2d 563, 569 (Mich. 2007).

It is thus clear that in Michigan, "the term of imprisonment" is not the maximum term served, but whichever is longer of the minimum sentence applied and the time actually served.

As we reject the BIA's determination that Shaya's sentence should be measured by its statutory maximum term, Shaya's sentence must be measured by the time he actually served in prison as it is longer that the minimum sentence imposed by the state court, nine months. However, as the record is unclear as to exactly how much time

Shaya served in prison for his assault conviction and neither the IJ nor the BIA made a specific finding in that regard, we remand to the BIA to make such a determination. If, on remand, it is determined that Shaya served less than a year in prison, then he should be held not to be removable.[3]

IV

For the reasons discussed above, we **VACATE** the BIA's decision and **REMAND** to the BIA in order to determine how long Shaya served in prison for his assault conviction.

---

[3]Because the IJ did not adequately determine that Shaya was an aggravated felon and was thus ineligible for asylum or withholding of removal under the Convention, we do not address his other objections to the BIA's adoption of the IJ's decision denying him deferral of removal.

———————————

**DISSENT**

———————————

KETHLEDGE, Circuit Judge, dissenting.   The dispositive issue of statutory interpretation in this case, I believe, is one of federal rather than state law.  I agree with the majority that 8 U.S.C. § 1101(a)(43)(F) is unclear "as to whether 'term of imprisonment' refers to the maximum sentence available for the particular offense, the maximum sentence imposed by the sentencing court, the minimum sentence imposed by the sentencing court, or the amount of time actually served by the petitioner in prison." Maj. Op. at 6.  But the result of that obscurity is that the Board gets to choose among those plausible interpretations.  *See Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) ("The BIA's interpretation of the statute and regulations will be upheld unless the interpretation is arbitrary, capricious, or manifestly contrary to the statute") (internal quotation marks omitted).  The Board has chosen the second option here—namely, that for indeterminate sentences, the term of imprisonment is deemed to be the maximum sentence imposed by the sentencing court.  *See In re S–S–*, 21 I. & N. Dec. 900, 903 (1997).  That definition, therefore, is the one we must apply.  *See Nguyen v. INS*, 53 F.3d 310, 311 (10th Cir. 1995) ("We find the BIA's interpretation of an indeterminate prison sentence and its application to 8 U.S.C. § 1101(a)(43) to be permissible").

That definition eliminates any need to interpret Michigan law here, because it is undisputed that the maximum sentence imposed in Shaya's case was ten years.  His sentence therefore exceeds the one-year threshold specified in § 1101(a)(43)(F), which makes him removable as an aggravated felon.

I also think that Shaya's equitable arguments are without merit, and thus would deny his petition.  For these reasons, I respectfully dissent.