NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0711n.06

No. 09-3627

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

**FILED**
**Nov 15, 2010**
LEONARD GREEN, Clerk

FAWAD ZIA KHAN,

    Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

    Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS

_____ /

Before:    MARTIN and McKEAGUE, Circuit Judges; LUDINGTON, District Judge.[*]

BOYCE F. MARTIN, JR., Circuit Judge. Fawad Zia Khan seeks review of a Board of Immigration Appeals decision affirming an immigration judge's denial of his application for withholding of removal under section 241 of the Immigration Nationality Act, 8 U.S.C. § 1231, and relief under the Convention Against Torture. We find that the decisions of the Board and immigration judge are supported by substantial evidence, and therefore **DENY** Khan's petition for review.

**I.**

Fawad Zia Khan is a native and citizen of Pakistan who came to the United States in 1987 to attend college at the University of Toledo in Ohio. At college, Khan identified with his non-Muslim classmates and enjoyed meeting new people who did not practice Islam. Khan stopped

_____

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

attending Muslim prayer services shortly after he arrived in the United States despite his Muslim classmates' repeated attempts to get Khan to accompany them to pray. Although Khan's family is Muslim, Khan renounced Islam and testified, "I just refuse to live like a Muslim, because I am not a Muslim." At one point, another student warned Khan that he should stop saying he renounced Islam because members of a Muslim student association were threatening to kidnap and assault him for his apostasy.

Although Khan went to college to study engineering, he switched majors to Sociology. In 1992, Khan was forced to stop attending school because his father, who did not see the value in a Sociology degree, would no longer pay the tuition. Khan then became homeless and lived on the streets and with friends for several years. Eventually, Khan found a steady job and place to live, and completed a correspondence course in computer programming.

Khan was issued a Notice to Appear on February 21, 2003. At a master calendar hearing on January 16, 2007, Khan appeared, admitted the factual allegations in the notice, and conceded removability. Khan then petitioned for asylum, withholding of removal, and relief under Article 3 of the Convention Against Torture.

Four of Khan's friends who have known him since his time at the University of Toledo appeared and testified at the hearing. These witnesses corroborated Khan's testimony that he is no longer a Muslim and that he fears returning to Pakistan because he believes he will be persecuted and possibly killed.

The immigration judge found that Khan's petition for asylum, filed sixteen years after he had arrived in the United States, was not timely. The immigration judge also denied withholding of

removal and relief under the Convention Against Torture. The immigration judge found that Khan and his witnesses were genuinely credible, but concluded that Khan did not establish that his life or freedom would, more likely than not, be threatened if he were returned to Pakistan. In reaching this conclusion, the immigration judge assumed that apostates are persecuted in Pakistan, but found that Khan was unlikely to be identified as an apostate and therefore unlikely to be persecuted.

The Board affirmed the immigration judge's decision and Khan timely sought review.

**II.**

This Court has jurisdiction to review final orders of removal issued by the Board. *See* 8 U.S.C. § 1252(a) (2006); *Urbina-Mejia v. Holder*, 597 F.3d 360, 364 (6th Cir. 2010). When, as here, the Board supplemented the immigration judge's opinion, we review the "Board's decision as the final agency decision on issues which the Board actually addressed and the immigration judge's decision as final on those issues on which the Board made no findings." *Urbina-Mejia*, 597 F.3d at 364. However, because the Board did not materially add to the immigration judge's decision regarding whether Khan would be identified as an apostate, we refer primarily to the immigration judge's opinion.

This Court reviews questions of law de novo. *Id.* The Board and the immigration judge's findings are reviewed under the substantial evidence standard and cannot be reversed merely because we would have decided differently. *Id.* "These findings 'are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Shaya v. Holder*, 586 F.3d 401, 405 (6th Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(B)).

**III.**

Khan did not file for asylum within one year of arriving in the United States, and the immigration judge found that there were not sufficiently changed circumstances in Pakistan to permit his untimely asylum application. The Board affirmed these findings, which Khan does not challenge on appeal. Instead, Khan argues that the decisions of the immigration judge and the Board denying withholding of removal and relief under the Convention Against Torture are not supported by substantial evidence. There is no time limit for seeking relief under either of these provisions.

**A.     Withholding of Removal**

Withholding of removal is mandatory if the alien establishes that his or her "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing 8 U.S.C. § 1231(b)(3)(a)). "Although the [immigration judge] may grant withholding of removal based upon the same five grounds as a claim for asylum, the alien's burden of proof is different." *Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006). To establish eligibility for withholding of removal, the applicant must demonstrate that "there is a clear probability that he will be subject to persecution if forced to return to the country of removal." *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). This means that the alien must show that it is "more likely than not" that he or she would be persecuted on the basis of one of these five grounds if removed from this country. *INS v. Stevic*, 467 U.S. 407, 424 (1984); *see Urbina-Mejia*, 597 F.3d at 365. The Board has defined persecution as "the infliction of harm or suffering by a government, or persons a

government is unwilling or unable to control, to overcome a characteristic of the victim." *In re Kasinga*, 21 I. & N. Dec. 357, 365 (BIA 1996).

Applicants may establish that they will face persecution on removal by showing past persecution on a protected ground or a clear probability of future persecution. 8 C.F.R. § 208.16(b) (2010); *see Thap v. Mukasey*, 544 F.3d 674, 681 (6th Cir. 2008). An alien need not show that he or she will be individually singled out and persecuted in order to be eligible for asylum or withholding of removal if the alien can show that a country has a pattern or practice of persecuting an identifiable group that he or she belongs to. 8 C.F.R. § 208.16(b)(2). Because Khan did not renounce Islam before coming to the United States, he cannot show past persecution. Instead, Khan argues that he risks persecution in the future.

Finding that Khan and his witnesses were genuinely credible, the immigration judge necessarily concluded that Khan had renounced Islam and was now an atheist, or at least an apostate from Islam. The immigration judge then assumed that apostasy is a form of blasphemy in Pakistan, punishable by death, but concluded that Khan would not be identified as an apostate. Khan testified that if he were removed to Pakistan he would be identified as an apostate based on his failure to follow basic Islamic traditions. Alternatively, Khan also testified that he would be identified if he ran into one of his college classmates who knew that he had renounced Islam. The immigration judge agreed that Khan could be subject to persecution if he encountered one of his former classmates, but found that situation was extremely unlikely to occur given the time that has elapsed, the small number of students aware of his apostasy, and the size of Pakistan. This conclusion appears to be supported by substantial evidence.

Although the immigration judge did not explicitly address whether Khan would be identified as an apostate based on his failure to follow Islamic traditions, because Khan only submitted minimal evidence on this point, we cannot conclude that the immigration judge's decision is not supported by substantial evidence. At the hearing, Khan testified that even if he were returned to Pakistan he still would not observe any Muslim rituals, would not go the mosque, and would not fast on holidays. Khan also explained that in Pakistan, Muslims would be able to identify him as an apostate once they observed him not following these basic Islamic rituals. To illustrate this point, during cross-examination Khan recounted an incident when a Pakistani co-worker observed him eating lunch on a day of fasting. The co-worker began asking questions and inquiring whether Khan was going to the mosque to pray. Aside from seeing Khan eating, this individual did not know anything about Khan's religious beliefs. While this encounter arguably suggests that Khan might be identified as an apostate based on his failure to observe Islamic rituals in Pakistan, the immigration judge did not find it persuasive, and this one instance is not enough to compel a contrary conclusion on a petition for review before this Court.

Apart from this one event, that took place in the United States, Khan did not submit any other evidence to show that he would be identified as an apostate in Pakistan based on his failure to fast, attend prayer services, or follow other Islamic rituals. No other witnesses testified as to how a person who renounced Islam would be identified in Pakistan. Khan did not point to any scholarship or reports on this issue. Although a petitioner's testimony may be enough in some circumstances to meet his burden, in this case, we cannot conclude that this one event compels the conclusion that Khan would more likely than not be subject to persecution. Khan had the weighty burden of

establishing before the immigration judge that he would "more likely than not" be persecuted if returned to Pakistan. *See Stevic*, 467 U.S. at 424. Now, he has an even higher burden of proving that the immigration judge's decision is not supported by substantial evidence. *Shaya*, 586 F.3d at 405. Had Khan presented more evidence, from individuals with personal knowledge of present country conditions in Pakistan, he may have been able to meet his burden and show that he would be identified as an apostate. However, confined by our deferential standard of review and Khan's high burden of proof, we cannot conclude that the immigration judge's decision is not supported by substantial evidence.

Because Khan did not present evidence sufficient to compel the conclusion that he would be identified as an apostate, he cannot now rely on demonstrating that there is a pattern or practice of persecuting similarly situated individuals. If an alien can show that there is a pattern or practice of persecuting "persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion," the alien need not show that he or she will be individually singled out and persecuted in order to be eligible for asylum or withholding of removal. 8 C.F.R. § 208.16(b)(2).

It is unclear whether the Board would consider Khan, an apostate and atheist, to be a member of a social group[1] or a religion.[2] However, assuming that Khan could avail himself of this provision,

---

[1]Neither decision explains whether Khan is a member of a social group. The phrase "membership in a particular social group" is not statutorily defined. This Circuit has adopted the Board's definition of a "social group" as "'a group of persons all of whom share a common, immutable characteristic.'" *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005) (quoting *In re Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985)); *Castellano-Chacon v. INS*, 341 F.3d 533, 546, 549 (6th Cir. 2003). "Whatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is

and would be entitled to withholding of removal if he showed that there was a pattern or practice of persecuting others who are similarly situated, he still has not presented sufficient evidence to show that he would be identified as a member. Although an alien does not need to establish that he or she would be singled out under this provision, the alien still must show that it is "more likely than not" that he or she would be persecuted based on membership in the group and that there is a "pattern or practice" of persecuting similarly situated individuals. *Id.* Without demonstrating that he would be identified as a member of a social group or religion subject to persecution, we cannot conclude that Khan would, more likely than not, be persecuted even if other similarly situated individuals are.

### B. Convention Against Torture

Khan also argues that the immigration judge's decision denying him relief under the Convention Against Torture[3] is not supported by substantial evidence. To be eligible for withholding

---

fundamental to their individual identities or consciences." *Id.* (quoting *Acosta*, 19 I. & N. Dec. at 233). The Board's construction is reasonable and entitled to deference. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)).

[2]Neither the Board nor the immigration judge addressed whether the persecution that Khan complained of for being an atheist and apostate could qualify as persecution on account of religion. Because determining whether atheism and apostasy qualify as religions is a weighty policy decision, we believe that it is better addressed by the Board in the first instance. *Cf., e.g.*, *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (affording *Chevron* deference to Board decisions giving "ambiguous statutory terms concrete meaning through a process of case-by-case adjudication" (internal quotations omitted)); *Berhane v. Holder*, 606 F.3d 819, 824 (6th Cir. 2010) (recognizing that the "Board, not the judiciary, is best suited to" determine what amounts to a "serious nonpolitical crime").

[3]Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, art. 3, Dec. 10, 1984, S. Treaty Doc. No. 100-20, p. 20, 1465 U.N.T.S. 85; *see* 8 C.F.R. §§ 1208.16-.18.

of removal under the Convention Against Torture, the implementing regulations provide that the applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2); *see Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 503 (6th Cir. 2007). Relief under this section is quite similar to withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, but does not require that the applicant link the harm he or she will face with any of the five protected grounds for asylum—race, religion, nationality, membership in a particular social group, or political opinion. *See Castellano-Chacon v. I.N.S.*, 341 F.3d 533, 551-52 (6th Cir. 2003).

Because we find that the immigration judge's decision denying withholding of removal is supported by substantial evidence, we also find that the decision denying relief under the convention against torture is supported by substantial evidence.

## IV.

The Court is well aware of the hardships aliens face in removal proceedings such as this. While Khan may have been able to produce credible evidence supporting his argument that he would be identified as an apostate from his failure to follow basic Islamic traditions, he did not do so. It is troubling that we must deny a petition for review and find that the immigration judge's conclusion is supported by substantial evidence in large part because the record was not fully developed. However, because the record does not compel a contrary conclusion, we must conclude that the immigration judge's decision in this case was supported by substantial evidence and **DENY** Khan's petition for review.