*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOSE DANIEL ALONSO,

      Defendant-Appellant.

UNPUBLISHED
February 10, 2022

No. 347331
Van Buren Circuit Court
LC No. 2017-020932-FC

Before: M. J. KELLY, P.J., and STEPHENS and REDFORD, JJ.

PER CURIAM.

Defendant, Jose Alonso, appeals by leave granted[1] the trial court's denial of his motion to withdraw his guilty plea conviction of assault with intent to commit great bodily harm less than murder, MCL 750.84, on the basis of ineffective assistance from his defense lawyer. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Alonso, a citizen of Mexico, has lived for 16 years in the United States as a permanent resident. In 2017, he was charged with assault with intent to murder, MCL 750.83, reckless driving causing serious impairment, MCL 257.626, and assault with a dangerous weapon, MCL 750.82. On the date set for trial, Alonso pleaded guilty to assault with intent to do great bodily harm less than murder in exchange for the prosecution dismissing the original three charges. Additionally, Alonso and the prosecutor reached a *Killebrew*[2] agreement under which Alonso's sentence would be 5 to 15 years.

---

[1] This Court originally denied leave to appeal. *People v Alonso*, unpublished order of the Court of Appeals, entered March 26, 2019 (Docket No. 347331). Subsequently, our Supreme Court, pursuant to MCR 7.305(H)(1) and in lieu of granting leave to appeal, remanded this case to this Court as on leave granted. *People v Alonso*, 506 Mich 879 (2020).

[2] *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982).

Thereafter, Alonso filed a motion to withdraw his plea, arguing that his lawyer's assistance was constitutionally ineffective because he had only provided a generic warning that there might be immigration consequences to Alonso's plea. Alonso asserted that under federal immigration law if a sentence of one year or more is imposed, a conviction of assault with intent to do great bodily harm less than murder is an aggravated felony for which deportation is mandatory. Relying on *Padilla v Kentucky*, 559 US 356; 130 S Ct 1473; 176 L Ed 2d 284 (2010), he argued that under the relevant immigration statutes (and caselaw interpreting those statutes) the deportation consequence of his conviction are succinct, clear, and explicit; therefore, his lawyer had a duty to advise him that if he pleaded guilty to assault with intent to do great bodily harm less than murder with a sentencing agreement for a minimum of 5 years, he would be deported under federal immigration law. Thus, he asserted that, by only advising him that there might be adverse immigration consequences, his lawyer's performance fell below an objective standard of reasonableness.

The trial court held an evidentiary hearing on the motion. Alonso testified that with respect to immigration consequences, his trial lawyer advised him that "there might be some—some consequences, which [his lawyer] did not know about." He stated that he did not "really ask [his lawyer] any further about it." Later, he learned that he would be deported as a consequence of his conviction. He testified that if he had known that he would be deported, he would not have pleaded guilty and would have instead proceeded to trial on the original three charges. He also stated that he had never met with an immigration lawyer until after his conviction in this case, and he denied telling his trial lawyer that he was consulting with an immigration lawyer.

Alonso's trial lawyer testified that he discussed the potential immigration consequences with Alonso before trial. He stated:

> The word deportation was brought up, but I'm not an immigration attorney; I advised him and his family of that, but I told him that he definitely has consequences and he could be deported. Did I distinguish between one felony and another? No. Did I distinguish between an aggravated felony and a moral turpitude felony? No. I gave him some examples of case where clients have been deported. One of them was very similar to his.

> \* \* \*

> I gave him an example of a case that wasn't identical, but I remember it, it was a situation where a Saudi Western Michigan University student had ran his car into another's person's car on I-94—road rage—so it wasn't identical to Mr. Alonso's case, and I told him that after he had entered into a plea, even a plea where he had to plead to a felony and then it was reduced to misdemeanor after he graduated, that he ran into trouble and I believe was deported even on that factual situation where it was a felony reduced to a misdemeanor.

Alonso's trial lawyer also testified that, during their conversations, Alonso had expressed a belief that his family was working with an immigration lawyer. He also testified that he had "independent knowledge that [Alonso'] family was, or had, consulted with an immigration attorney." The record reflects that prior to being charged in the instant matter, Alonso was

convicted of carrying a concealed weapon (CCW). He testified that he was not advised of any immigration consequences in connection with that conviction. However, attorney Gary Stewart testified that he was contacted by an immigration lawyer, Richard Kessler, "about potentially initiating a *Padilla* issue" in the CCW case. When Alonso was charged in the present case, Stewart declined to represent Alonso because of a conflict of interest. Accordingly, he referred the matter to Alonso's trial lawyer. Alonso's trial lawyer testified that when Stewart referred the case to him, Stewart "indicated that he was referred to the case by some immigration lawyer" and "that they were working on . . . a CCW that [Alonso] was concerned about the ramifications of that and how that might affect his citizenship and deportation." Alonso's trial lawyer took no steps to consult with the immigration lawyer.

Following the evidentiary hearing, the trial found:

> In this particular case, Mr. Alonso came to [his trial lawyer], apparently through—what appears to be through—another attorney. There was an immigration lawyer already involved because of a prior conviction so [Alonso's trial lawyer] came into this understanding, reasonably so or inferring reasonably so, that there was an immigration attorney already involved. Mr. Alonso told him there was an immigration attorney already involved. Mr. Alonso talked to [his trial lawyer] about the immigration consequences. [His trial lawyer] testified that he told Mr. Alonso there will be consequences. He indicated he didn't know what the consequences would be, whether it would be deportation or not, but he made it clear to Mr. Alonso that there will be consequences.

Thereafter, the court determined that the immigration consequences of Alonso's plea were unclear or uncertain. As a result, under *Padilla*, Alonso's trial lawyer's duty was limited to advising Alonso that he might be subject to adverse immigration consequences. Because Alonso's lawyer did, in fact, advise Alonso that he might be subject to adverse immigration consequences, the trial court concluded that his performance was not deficient.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Alonso argues that the trial court erred by determining that the immigration consequences of his plea-based conviction were uncertain or unclear. He asserts that because the immigration consequence is clearly a mandatory deportation, his lawyer was required to advise him of that clear consequence and his failure to do so constituted deficient performance under *Padilla*. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (quotation marks and citation omitted). "The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *Id*.

### B. ANALYSIS

A defendant is entitled to the effective assistance of a lawyer when considering or negotiating a plea agreement. *People v Douglas*, 496 Mich 557, 591-592; 852 NW2d 587 (2014).

Relevant to the issue raised on appeal, a defense lawyer is obligated to properly advise a defendant regarding "whether his plea carries a risk of deportation." *Padilla*, 559 US at 374. However, because "[i]mmigration law can be complex, and is a legal specialty of its own," the *Padilla* Court recognized that there will "undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain." *Id*. at 369. "When the law is not succinct and straightforward (as it is in many of the scenarios posited by Justice Alito), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id*. In a concurring opinion, Justice Alito posited that determining whether a particular crime is an "aggravated felony" or a "crime involving moral turpitude" involve areas of immigration law that are not succinct and straightforward. *Id*. at 378-379 (concurring opinion by Alito). The majority, acknowledging that numerous scenarios where the law is not succinct and straightforward, explained that it was only in cases where the "deportation consequence is truly clear" that the criminal defense lawyer's duty "to give correct advice is equally clear." *Id*. at 369 (opinion of the Court).

In *Padilla*, the defendant was a native of Honduras, but had been a lawful permanent resident of the United States for more than 40 years. *Id*. at 359. The defendant pleaded guilty to transporting a large quantity of marijuana, and, as a result of his plea, "his deportation was virtually mandatory." *Id*. at 359-360. His lawyer incorrectly advised him that he would not face any deportation consequences because of the length of time that he had been in the country. *Id*. at 359. In analyzing whether his lawyer's performance was deficient, the Supreme Court held:

> In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. See 8 USC 1227(a)(2)(B)(*i*) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"). Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses. Instead, Padilla's counsel provided him false assurance that his conviction would not result in his removal from this country. This is not a hard case in which to find deficiency: The consequences of Padilla's plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect. [*Id*. at 368-369 (quotation marks and citations omitted).]

Unlike the deportation consequence in *Padilla*, the deportation consequence in this case could not be easily determined by reading a single statute. Instead, a criminal defense lawyer would have to examine multiple sections of the federal Immigration and Nationality Act, 8 USC 1101 *et seq*. First, the defense lawyer would have to consider that under 8 USC 1227(a)(2), an alien convicted of a felony may be deportable. 8 USC 1227(a)(2). As recognized by Justice Alito in *Padilla*, it may be difficult "for defense counsel even to determine whether a client is an alien." *Padilla*, 559 US at 379-380 (concurring opinion by Alito). Next, the defense lawyer must discover that 8 USC 1229(b) provides that an order of removal may be canceled if certain circumstances

specific to the alien and his or her offense exist. However, an alien convicted of an "aggravated felony" is ineligible for cancellation of removal, 8 USC 1228(a)(3). 8 USC 1101(a)(43) provides a long list of crimes constituting aggravated felonies. At issue in this case is 8 USC 1101(a)(43)(f), which provides that "a crime of violence (as defined in section 15 of title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least one year" is an aggravated felony. A "crime of violence" is defined by 18 USC 16:

> The term "crime of violence" means—
>
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In 2018, the United States Supreme Court concluded that § 16(b), the statute's "residual clause," was unconstitutionally vague. *Sessions v Dimaya*, ___US___, ___; 138 S Ct 1204, 1215-1216; 200 L Ed 2d 549 (2018). Accordingly, only § 16(a) is constitutional.

At this point in the analysis, a criminal defense lawyer might conclude that he or she should look to see if there is any caselaw that clearly states the crime the defendant is charged with has been classified as an aggravated felony because it is a crime of violence. Alonso argues that a simple search would turn up *Shaya v Holder*, 586 F3d 401 (CA 6, 2009). In *Shaya*, the Court of Appeals for the Sixth Circuit noted that the statutory definition of "crime of violence" requires that the defendant be subjected to a "term of imprisonment [is] at least one year." *Id*. at 403. The Court then held that "when using Michigan indeterminate sentences as the predicate for classifying someone as an 'aggravated felon,' the term must be measured by the sentence actually served or the minimum sentence given, whichever is greater . . . ." *Id*. In doing so, the *Shaya* Court recognized that "whether a particular state conviction amounts to an aggravated felony conviction . . . depends upon interpreting state statutes . . . unrelated to immigration." *Id*. at 405 (quotation marks and citation omitted). As a result, the court examined at length how indeterminate sentencing is treated under Michigan law. See *id*. at 405-408. The Court did not, however, address any of the other requirements that must be satisfied before a crime is considered a crime of violence under 18 USC 16. Instead, the Court noted only that the defendant did not dispute the classification of his conviction for assault with intent to do great bodily harm less than murder as a crime of violence. *Id*. at 405 n 1. Thus, although there is caselaw suggesting that assault with intent to do great bodily harm less than murder in Michigan may be a crime of violence, the only part of the definition of crime-of-violence that was actually analyzed was the one-year-imprisonment requirement, and the *Shaya* Court deliberately did not address any of the remaining requirements.[3]

---

[3] In doing so, the *Shaya* Court did not foreclose the possibility of a future defendant arguing that his or her conviction of assault with intent to do great bodily harm less than murder was *not* a crime of violence.

Finding no clear and straightforward answer in federal caselaw, a criminal defense lawyer attempting to ascertain whether assault with intent to do great bodily harm less than murder is an aggravated felony could turn to a comparison of the elements of the crime with the definition of crime of violence set forth in the INA. Presumably, at that point, the lawyer would note that under 18 USC 16, a "crime of violence" requires that the underlying offense "has as an element the . . . attempted use . . . of physical force against the person or property of another." In turn, under MCL 750.84(1)(a), requires that the defendant "assaults another person with intent to do great bodily harm, less than the crime of murder." The Michigan statute does not mention that the defendant must attempt to use physical force against another person or that person's property, so the defense lawyer would then have to turn to caselaw or jury instructions to determine what "assault" means as that term is used in MCL 750.84(1)(a). In *People v Bailey*, 451 Mich 657, 668-669; 549 NW2d 325 (1996), our Supreme Court held that, as used in MCL 750.84(1)(a), an assault is "an attempt or offer with force and violence to do corporal harm to another." At that point, the defense lawyer could say, with some level of certainty, that as long as the sentence of imprisonment for assault with intent to do great bodily harm less than murder is at least one year, then it is a crime of violence, so it is an aggravated felony that renders the defendant ineligible for cancellation of removal, which means that the defendant will, in fact, be deported.

When comparing *Padilla* to this case, it is clear that the determination of whether assault with intent to do great bodily harm will result in a mandatory deportation is not straightforward and clear. Instead of reference to a single statute that clearly, succinctly, and explicitly states that a defendant convicted of a certain offense will be deported, the analysis in this case requires reference to multiple sections of the INA, including sections that have been held unconstitutional. Although relevant caselaw exists—*Shaya*—that opinion expressly addresses only the requirement that an offense can only be considered a crime of violence if it includes a sentence of at least one year's imprisonment. Thereafter, comparison of the elements of assault with intent to do great bodily harm less than murder requires the defense lawyer to compare both the statutory language and state caselaw interpreting it to the relevant provisions in the INA. To state the analysis is to show its complexity. Given that the *Padilla* Court expressly approved of Justice Alito's statement that determining whether an offense is an aggravated felony is not straightforward and succinct, we discern no error in the trial court's determination that the statutes and caselaw and are not clear and straightforward. As a result, the only duty that Alonso's lawyer had was to advise Alonso that there would be adverse immigration consequences. The record reflects that he did so, and that, although he did not state with certainly what those consequences would be, he gave an example of a similar offense that resulted in the defendant being deported. Because Alonso's lawyer's performance was not deficient, Alonso cannot prevail on his ineffective assistance claim.

Affirmed.

/s/ Michael J. Kelly
/s/ James Robert Redford